No. 24,649.

MELISSA CARL, as Administratrix of the Estate of ETHEL CARL, Deceased, *Appellee,* v. JOHN ACKARD, *Appellant.*

### SYLLABUS BY THE COURT.

1. DAMAGES—*Wrongful Death—Evidence.* Complaints concerning the introduction of evidence have been examined, and no substantial error has been found.

2. SAME—*Objection to Argumentative Question Properly Sustained.* It is proper for the court to sustain an objection to a question wholly argumentative in its nature.

3. SAME—*Death from Kick of Vicious Mule—Duty and Liability of Owner of Breachy Mule.* An owner of a breachy mule, vicious toward other animals, is liable for the death of a person caused by being kicked by the mule, where its owner had notice of its viciousness and where it escaped from, or was permitted to leave, its place of confinement and trespassed on the premises of another where it injured the person while she was attempting to protect a colt from an attack by the mule.

4. SAME—*Sufficient Evidence to Warrant Recovery.* There was evidence to prove facts sufficient to entitle the plaintiff to recover.

5. SAME—*Contributory Evidence Not Shown.* The contention of the defendant that Ethel Carl, the person injured, was guilty of contributory negligence cannot be sustained.

6. SAME—*Nonprejudicial Evidence.* Certain evidence complained of may have been inadmissible because immaterial, but it was not prejudicial.

7. SAME—*Excessive Verdict—Amount Reduced.* Judgment for $10,000 in this case appears to be excessive. It is reduced to $6,000 if the plaintiff will accept judgment for that amount; if she does not do so, a new trial is directed.

Appeal from Thomas district court; CHARLES I. SPARKS, judge. Opinion filed November 10, 1923. Modified.

*E. H. Benson,* of Colby, *Fred Robertson, Richard J. Higgins,* and *Edward M. Boddington,* all of Kansas City, for the appellant.

*D. M. McCarthy,* of Mankato, *A. W. Relihan, T. D. Relihan,* and *J. T. Reed,* all of Smith Center, for the appellee.

Carl, *Administratrix,* v. Ackard.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment against him for $10,000, damages for the wrongful death of Ethel Carl.

There was evidence which tended to show that the defendant owned a breachy mule which could not be confined by fences; that the mule was vicious toward young animals and had attacked and killed them; that the mule often jumped the inclosures in which it was confined and trespassed on the property of the neighbors; that on about June 11, 1921, the mule escaped from its place of confinement on the property of the defendant and went to the premises of the plaintiff, Melissa Carl, the mother of Ethel Carl, where Melissa Carl, Ethel Carl, and other members of their family resided; that the mule jumped into the inclosure where a mare and young colt belonging to some of the members of the Carl family were confined; that the mule attacked the colt; that Ethel Carl went into the inclosure to protect the colt and to drive out the mule; and that the mule then attacked Ethel Carl and kicked her in the face, wounding her severely, from the effects of which she died in about two weeks.

The case was tried by a jury, which returned the following answers to special questions:

"1. On June 11th, 1921, did Ray Carl drive the mule that is alleged to have injured Ethel Carl, deceased, out of the public highway and on to the premises occupied by Melissa Carl?  Answer. No.

"6. Was the mule that injured Ethel Carl on June 12th, 1921, a vicious mule toward human beings on said date?  Answer. Yes.

"7. Was the mule that injured Ethel Carl vicious toward animals on June 12th, 1921.  Answer. Yes.

"8. Was the mule that injured Ethel Carl ever been vicious toward either human beings or animals?  Answer. Yes.

"9. Did the defendant, John Ackard, know that the mule that injured Ethel Carl had any vicious propensities?  Answer. Yes.

"10. Did the plaintiff or any one for her notify John Ackard personally or any way to come and take said mule from the Carl premises?  Answer. Yes.

"11. Did the Ackard mule viciously run at Ethel Carl and wheel around and kick her, or was she simply struck in some way by the mule as it jumped over the fence?  Answer. Viciously ran and kicked Ethel Carl.

"12. What month and year was Ethel Carl going to be married if she was to be married?  Answer. Do not know."

1. The defendant's first contention is as follows:

"Appellant appeals from the following erroneous rulings of the court which prejudiced the rights of defendant."

41—114 KAN.

Under this head, defendant argues seven different propositions concerning the introduction of evidence, none of which have any merit. Even if the contention of the defendant were correct concerning the admission or rejection of evidence, it would not be sufficiently material to warrant the reversal of the judgment. Further discussion of those propositions is not justified.

2. Another ground of complaint is "misconduct of prevailing party's counsel." We quote from defendant's brief—

"While counsel for appellant was examining Verne Coyner, in exchange of questions the witness pretended not to hear or understand appellant's question and appellant's counsel questioned him, 'You heard my question?' Mr. Relihan objected to this as insulting. This objection was clearly made for the effect it would have upon the jury and was sustained by the court which added greatly to the prejudice against appellant, which was from time to time impressed upon the jury by plaintiff's counsel." .

Concerning this matter, the abstract discloses the following: Ethel Carl, after being injured, was taken to Doctor Eddy's office in Colby. Concerning that matter, the witness was questioned and answered as follows:

"Q. Was there anybody else there at Doctor Eddy's office when during the time you were there? A. Yes, sir.

"Q. Who? A. Who was in the office?

"Q. You heard my question.

"Mr. Relihan: Object. Argument, insulting.

"By the court: Sustained."

Upon reading this examination of the witness, we conclude that the question was argumentative, that the objection was properly made, and was rightly sustained.

3. The defendant urges that—

"The trial court failed to properly instruct the jury, failed to clearly define the issues, and erroneously instructed the jury on the law in this case."
and

"The court erroneously instructed the jury regarding the duty of Ackard, the owner of this mule, as follows:

."The burden of proof is upon plaintiff to prove by a preponderance of the evidence [etc.], that her death was the proximate result of being injured by a mule owned by the defendant as hereinafter explained in these instructions."

"Any knowledge which Thomas Ackard had during said time relative to the characteristics of said mule was also the knowledge of the defendant John Ackard.

"It is the duty of the owner of a mule to keep the same within an inclosure that will reasonably and properly keep such animal therein, and if said animal has been owned by the owner for such a period of time as he, in the exercise

of ordinary care, could or should have learned the usual characteristics of such animal, then he is bound in law to keep such animal within such inclosure that in the light of such knowledge that would reasonably and properly keep said mule within such inclosure."

These are excerpts from the instructions given. There is nothing wrong with the first of the quoted paragraphs of the instructions, nor with the instruction from which it is taken. The instructions from which the last two excerpts are taken, were as follows:

"3. As heretofore stated in these instructions on the 12th day of June, 1921, one Thomas Ackard was the agent and employe of the defendant in the taking care of the mule that it is claimed caused the death of Ethel Carl, and that said Thomas Ackard had been acting in such capacity since the time that the defendant acquired the ownership of such mule. It then follows as a matter of law that any knowledge which Thomas Ackard had during said time relative to the characteristics of said mule was also the knowledge of the defendant, John Ackard.

"4. You are instructed that it is the duty of the owner of a mule to keep the same within an inclosure that will reasonably and properly keep such animal therein, and if such animal has been owned by the then owner for such a period of time as he, in the exercise of ordinary care, could, or should have learned the usual characteristics of such animal, then he is bound in law to keep such animal within such an inclosure that in the light of such knowledge that would reasonably and properly keep said mule within such inclosure. If said mule is not so confined and is permitted to go upon the land of others, and if the owner of said mule at said time, acting as an ordinary cautious and prudent person might reasonably have expected that said mule would do some damage upon the premises of such others, and if the damage so done is the proximate result of said mule's, then the owner of said mule would be liable for such damages so caused, whether he could have foreseen the specific damages caused or not."

These instructions, in substance, base the liability of the defendant on his knowledge of the vicious propensity of the mule.

To sustain his contention, the defendant cites *Fillmore v. Booth,* 29 Kan. 134. We quote the syllabus to that case, as follows:

"Where the owner of stock turns them into a field owned and occupied by him, and the stock pass or wander out of the field and run at large upon a small parcel of land not cultivated, occupied, or used by him, and from there break into the premises of another through a defective and insufficient fence, the owner of the stock is not liable for the damages committed by them."

To substantially the same effect are *Caulkins v. Mathews,* 5 Kan. 191, and *Larkin v. Taylor,* 5 Kan. 433.

These cases do not apply to an animal whose owner has notice that it is vicious toward other animals. The owner of a vicious animal, who has notice thereof, must confine it.

Carl, *Administratrix*, v. Ackard.

" A majority of them [the cases] hold that the gist of the action is the keeping of the animal with knowledge of its vicious propensity, and that the liability of the owner is not affected by any degree of care he may exercise in keeping it. Under this doctrine the owner or keeper of a vicious animal, who knows its disposition, is an insurer against its acts, in favor of one who without fault is injured by it. On the other hand it is held or said in many cases that the gist of the action is negligence in not keeping the animal secure, which, however, is presumed whenever the animal is permitted to inflict injury on another. This presumption may be rebutted by proof that the owner or keeper exercised a degree of care commensurate with the danger. It follows that under neither line of decisions is affirmative proof of negligence necessary, in the first instance, provided scienter exists. On proof of the vicious propensity, defendant's scienter, and the injury, a prima facie liability is established, and defendant is put to his defense." (3 C. J. 90.)

Section 3381 of the General Statutes of 1915 should be noticed. It reads as follows:

"If the owner of a mischievous animal, knowing its propensities, unlawfully suffer it to go at large, or shall keep it without ordinary care, and such animal, while so at large and not confined, kills any human being who shall have taken the precautions which the circumstances may permit to avoid such animal, such owner shall be deemed guilty of manslaughter in the third degree."

The jury found, and there was evidence which tended to show, that the defendant had notice of the viciousness of the mule toward other animals. The evidence also tended to show, and the defendant admitted, that the mule was breachy and could not be confined by fences. It follows that when the defendant permitted the mule to escape, he was liable for all damages that resulted from its viciousness. This conclusion is partly supported by *Hartman v. Railway Co.,* 94 Kan. 184, 146 Pac. 335.

4. It is argued that the defendant's motion for a new trial should have been sustained "when it was pointed out to the court on argument thereon that plaintiff had not proven facts sufficient to make a case or constitute a cause of action against the defendant." Under this head, the defendant argues that there was no evidence tending to show viciousness on the part of the mule toward human beings and for that reason no cause of action was proved. This argument is not good because it was not necessary to show that the mule was vicious toward human beings.

The defendant also argues that no cause of action was proved because the members of the family of the plaintiff drove the mule on the premises on the evening before the injury to Ethel Carl. The evidence does not sustain that assumption, and the jury found con-

trary thereto. There was evidence which tended to prove that a brother of Ethel Carl and a friend on that evening found the mare and colt with the mule near them and drove the mare and colt into an enclosure and attempted to drive the mule away but could not do so, and that the mule followed and, in spite of the efforts of Carl and his friend, entered the premises of the plaintiff.

5. It is argued that Ethel Carl was guilty of contributory negligence in going too near the heels of the mule. The mule was vicious toward animals; it was breachy; it was in the lot attacking the colt; Ethel Carl had the right to protect the colt and drive the mule out of the lot; she was not guilty of negligence in trying to protect the colt and to drive the mule away. There was evidence which tended to show, and the jury found, that the mule attacked her. That finding establishes that she was not negligent.

6. We quote from the defendant's brief as follows:

"The court permitted testimony in this case about an offer of settlement and compromise on the part of the Carls with defendant Ackard, involving not only the issue of this case but also a controversy about settling the issue of feed, a wholly distinct and separable controversy. The court failed to instruct the jury to disregard such testimony and permitted the whole of such testimony to be considered by the jury, to the great prejudice of the defendant herein."

This matter has been examined. The evidence may have been inadmissible, but the court is unable to see wherein it was prejudicial. If it was inadmissible, it was likewise immaterial and for that reason was not prejudicial.

7. The defendant contends that the verdict was excessive. Melissa Carl, the mother of Ethel Carl, was sixty-one years of age at the time of the injury. The evidence tended to show that the latter contributed about $80 a month toward the expenses of the family of Melissa Carl. The statute provides that judgment for wrongful death shall not exceed $10,000. (Civ. Code, § 419.) The judgment appears to the court to be excessive.

The judgment is reduced to $6,000 if the plaintiff will accept that amount; if she will not do so, the judgment is reversed and a new trial is directed.

Dawson, J. (dissenting in part): The plaintiff testified that she kept no account of how much her daughter had contributed to her support but that she (Ethel) had spent $75 to $80 per month for groceries to feed six people and helping buy furniture. Plaintiff

testified: "We all ate the groceries she bought, Ray, Roy, Verne, Ruth, Ethel and I." Ruth testified, "I am 22 years old and I helped eat the grub which Ethel brought down there." Ray and Roy were grown men; Verne was a son-in-law of plaintiff; Ruth was the wife of Verne.

It was upon this sort of evidence that the mother's damages were determined to be $10,000. Neither mother nor daughter were under the slightest legal or moral obligation to support these people. The extent of the loss and damage through Ethel's death which the law can take into account is not based on sentiment, bereavement, and the like, nor on how much the dead girl was worth as a provider of food to her grown and able-bodied relations, but on the mother's own loss of personal support measured as accurately as possible in dollars and cents. Since Ethel's $75 to $80 per month fed six grown people, it will be reasonably close to the facts to figure that the daughter contributed one-sixth of that sum, $13.66 per month to the support of her mother. Not more. An annuity of $13.66 per month for the mother for the rest of her life would cost about $1,875, certainly not to exceed $2,000. These figures demonstrate that the verdict of $10,000 was grossly excessive, and the judgment should be greatly reduced or a new trial ordered.