No. 33,416

J. M. HILLIARD and MRS. J. M. HILLIARD, His Wife, *Appellees*, v. SOUTHERN KANSAS STAGE LINES COMPANY and M. C. SCHAEFFER, *Appellants*.

(70 P. 2d 28)

Opinion filed July 10, 1937.

*J. B. McKay*, of El Dorado, *J. W. Blood, F. W. Prosser* and *A. M. Buzzi*, all of Wichita, for the appellants.

*C. Glenn Morris*, of Topeka, and *Stanley Taylor*, of El Dorado, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This was an action brought by J. M. Hilliard and Mrs. J. M. Hilliard, his wife, for damages for the wrongful death of their daughter, Bonnie Hilliard. Plaintiffs recovered a verdict in the sum of $4,500, which upon a motion for a new trial was reduced to $4,000 by remittitur, and defendants have brought this appeal.

It was alleged in plaintiffs' petition that on the 9th day of July, 1935, about 11 o'clock p. m., Fred Rierson and Bonnie Hilliard in a Ford coupé were driving in a northerly direction on U. S. highway No. 77 between Augusta and Gordon, Kan. It is alleged that the Ford coupé was being driven and operated by Fred Rierson when it was overtaken by a bus being driven by M. C. Schaeffer and belonging to the defendant Southern Kansas Stage Lines Company, and that the bus ran into the rear of the Ford coupé in which plaintiffs' daughter was riding, overturning the coupé and throwing her out, as a result of which she received injuries from which she died.

It was further alleged that the car in which plaintiffs' daughter was riding was being driven on its side of the highway at a proper rate of speed, but that the bus was being driven at an excessive rate of speed, and that the driver failed to sound his horn as he attempted to pass them, and failed to pull to the left far enough to clear the vehicle in which plaintiffs' daughter was riding, and that the driver of the bus failed to apply his brakes and as a result struck the Ford coupé, and plaintiffs' daughter was thrown out and killed.

For a more complete statement of the facts, reference is made to the case of *Rierson v. Southern Kansas Stage Lines Co.,* ante, p. 30, 69 P. 2d 1, a former lawsuit growing out of the same collision. Plaintiffs also allege that their daughter was twenty-four years of age, that she had obtained a teacher's certificate from the Oklahoma A. & M. College, and at the time of her death was capable of earning from $125 to $160 per month, and that prior to her death she contributed in a material way to the assistance of her parents and had orally agreed to assist in educating her younger brother and sister, and that they expected to receive further financial assistance from her, of which they were deprived as the result of her death.

The case was tried by a jury, and answers to special questions were returned. The jury returned a general verdict against the defendants in the sum of $4,500. Defendants filed their motion for a new trial and a motion to set aside certain special findings of the

jury, and the plaintiffs filed a motion for judgment on the special findings. The court announced it would grant a new trial unless the plaintiffs were willing to accept a remittitur of $500. This was agreed to, and thereupon judgment was rendered in the sum of $4,000. The defendants set forth numerous specifications of error. It was contended that the court committed error in failing to sustain defendants' demurrer to the evidence. However, this contention cannot be raised by the defendants for the reason that the order overruling the demurrer was made on the 10th day of March, 1936, and no appeal has been taken from that order. A motion for a new trial is neither necessary nor proper to raise the question of the propriety of a ruling on a demurrer to evidence. A ruling on a demurrer to the evidence is a ruling on a matter of law and must be appealed from within the time limited for appeal from the date of making such order. (*Wagner v. Railway Co.*, 73 Kan. 283, 85 Pac. 299; *Rierson v. Southern Kansas Stage Lines Co.*, ante, p. 30, 69 P. 2d 1.)

The chief contention on this appeal is that the court erred in failing to set aside the verdict as being grossly excessive in the light of the testimony, and upon this point the special findings of the jury are as follows:

"Q. What, if any, contribution either in money, goods or personal services had the deceased made to her parents during the eighteen months immediately preceding her death? Give the value of any goods and value of any personal services. A. Value of goods at about $150. Personal service about $750.

"Q. Was the deceased engaged to be married to the witness Rierson on or about July 20, 1935? A. According to testimony, yes."

It appears from the testimony that Bonnie Hilliard, the deceased daughter of the plaintiffs, was twenty-four years of age; that she had had two years in college and two summers in school and had received a teacher's certificate from the Oklahoma A. & M. College; that she had taught for three years and had received $110 per month for her services while teaching; that she had quit teaching and had gone back to school and had left school in January, 1934, and had come home to help take care of her home when her mother became ill; that she had done no teaching of any kind between January of 1934 and the 9th day of July, 1935, except to give some music lessons to her younger brother and sister. The testimony showed that her father had contributed $1,200 to her college education and that she had never repaid any part of this sum; that outside of her doing the housework she had contributed to the family two twenty-six-dollar payments on the family automobile and had purchased

fifty dollars' worth of furniture and had bought some material for clothes for her younger brother and sister. The evidence also showed that she was engaged to marry Fred Rierson and that the marriage date was set for July 20, 1935, eleven days after the date she received the injuries from which she died.

We have, therefore, presented to us for determination the difficult question as to whether the amount of damages allowed the parents for the death of their adult child caused by the negligence of these defendants is excessive. The question must be decided from all the circumstances in this case as shown by the evidence in the light of the rules laid down by this court. In the early case of *K. P. Rly. Co. v. Cutter*, 19 Kan. 83, this court, speaking through Brewer, J., said:

"Many cases have arisen in the different states under statutes like this, and many inquiries have been made in the various courts as to the proper matters for consideration by the jury in fixing the damages. It is safe to say that no rule has yet been laid down of definite and precise statement, and applicable to all cases. That the purpose of the statute was to give to the survivors compensation for the value of the life taken away, may be conceded; and therefore all the elements which go to make that life valuable are proper matters of consideration; and matters which do not affect its value to the survivors, such as the pain and suffering endured by the deceased, the grief and sorrow of the survivors, are not to be considered. But how shall the value of a man's life be determined? By the needs of the survivors? Where the deceased leaves a family of small children, should the recovery be greater than where he leaves none? That logically would exclude all recovery where the deceased left no one dependent upon him. By the probable earnings of the deceased? That would often furnish the most inadequate compensation in the most deserving of all cases, as, where a wife and mother is the party killed. By the present value of the probable net accumulations of the deceased, considering his present business and expectation of life? That would be open to objections of the same character as the last, only of a far more serious nature. In the very nature of things it seems to us an exact and uniform rule of measuring the value of the life taken away, to the survivors, is impossible. The elements which go to make up the value are personal to each case. All that can well be done is, to say that the jury may take into consideration all the matters which go to make the life taken away of pecuniary value to the survivors, and, limited by the amount named in the statute, award compensation therefor. To go beyond this, and lay down an arbitrary rule for valuing the life of the deceased, a rule applicable to all cases alike, however satisfactory it might be because of its uniformity, would in many instances operate to defeat the accomplishment of the wholesome purposes sought by this act." (p. 91.)

In the case of *Railway Co. v. Ryan*, 62 Kan. 682, 64 Pac. 603, it was said:

"It is not, however, a case of excessive damages given under the influence of passion and prejudice, and, therefore, to be set aside under the statute, but it is a failure to make proof of substantial damages, and therefore to be set aside, on the general principles of law. An action of the character of this one is purely compensatory. It is brought to recover for pecuniary loss consequent upon death. There being no legal liability resting upon M. J. McGlade to contribute to the support of his kinspeople, they can maintain the action only upon proof that he had contributed to them in some way, or had recognized his family obligation to do so and had manifested a disposition to discharge it. All the authorities are to this effect. (*A. T. & S. F. Rld. Co. v. Brown, Adm'r*, 26 Kan. 443; *A. T. & S. F. Rld. Co. v. Weber, Adm'r*, 33 Id. 543, 6 Pac. 877; *Coal Co. v. Limb*, 47 Id. 469, 28 Pac. 181.) In the last case cited it was said: 'This is an action for compensation only, and no damages can be recovered by the plaintiff below except for the pecuniary loss which the parents sustained by the death of the son. The burden was on the adminis-trator to show that loss occurred. If there was no evidence that his life had been of actual benefit to the parents, or that any benefits might be reasonably expected by the continuance of his life, then no more than nominal damages could be recovered. (*Railroad Co. v. Weber*, 33 Kan. 543.) There must have been evidence either of actual benefits or those in expectation before the jury can give substantial damages; and an attempt to assess such damages without proof would be to indulge in mere conjecture, which is not permissible. If the son had contributed anything in the past, there would be grounds for the ex-pectation that he would have continued to contribute in the future; or if the son was a minor, the parents would have a legal right to the services of the son during his minority; but after majority no such legal right exists, and the benefits thereafter would depend upon the capability of the son and his disposition to confer benefits on his parents.' "

(See, also, *Railway Co. v. Fajardo*, 74 Kan. 314, 86 Pac. 301; *Denver v. Railway Co.*, 96 Kan. 154, 150 Pac. 562; *Aaron v. Telephone Co.*, 89 Kan. 186, 131 Pac. 582; *Carl v. Ackard*, 114 Kan. 640, 220 Pac. 515; *Hiller v. Kepler*, 125 Kan. 679, 266 Pac. 73.)

Upon a careful consideration of all the evidence in the case before us, we feel that the judgment for $4,000 is excessive. The judgment is reduced to $3,000, if the plaintiffs will accept that amount, and with this modification, affirmed; if they will not do so, the judgment is reversed and a new trial is directed.

HARVEY, J. (dissenting): I am of the opinion the judgment should be affirmed in its entirety and dissent from the conditional order reducing the amount thereof.

SMITH, J. (dissenting): I dissent from so much of the opinion as reduces the amount of this judgment. I note the opinion uses the following language: "We have therefore presented to us for

determination the difficult question as to whether the amount of damages allowed the parents for the death of their adult child caused by the negligence of these defendants is excessive." It occurs to me that it is properly the function of the jury to determine the amount of damages, and unless the award be so grossly excessive as to shock the conscience of the court it should not be disturbed. Appellate courts are supposed to be guided in their conclusions by some precedent or statute, some guidepost. I defy anyone to point out to me a rule or formula by which the judgment in this case should be reduced from $4,000 to $3,000. Is it because the young lady was to be married and for that reason would not have been able to contribute to the support of her parents? If this court adopts that rule then every dutiful son or daughter who makes the last days of an aged father or mother comfortable will look in wonder upon a court that follows such an inhumane doctrine. Is it because there is no proof in this record that these parents were actually damaged by the death of this young lady? If that is the rule then the stage company could kill the seventeen-year-old son of the writer of this dissenting opinion and escape liability altogether because that boy will be an expense to his parents for the next few years. This court will never write such a rule into the books, but such is the only reasoning upon which the judgment in this case can rest. It does not, however, have even that weak and inhumane support, because there is evidence in this record that this young lady had contributed to the support of her parents and had promised to pay her father for the expenses of her college education. The opinion approves the award of a judgment of $3,000 to the parents. Where is the evidence that they have been damaged $3,000 rather than $4,000? It is not in this record in the testimony of witnesses nor can it be inferred from the surrounding facts and circumstances.