No. 52,816

MR. and MRS. ROBERT McCART, *et al., Appellees,* v. MR. WILLIAM G. MUIR, As surviving parent and next of kin of Stephan A. Muir, deceased in his individual capacity, *Appellant.*

(641 P.2d 384)

Opinion filed February 27, 1982.

*Richard L. Honeyman,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Steven R. Smith,* of the same firm, and Light, Yoxall, Antrim & Richardson, of Liberal, were with him on the brief for the appellant.

*Daniel J. Sevart,* of Render & Kamas, of Wichita, argued the cause, and *John W. Johnson,* of the same firm, and *C. Dean Homolka, II,* of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This is a consolidated wrongful death action arising from a two-vehicle accident occurring in Meade County, Kansas in February, 1977. Three sets of parents claim separate damages for the injury or death of their respective children. Five children were killed and one was injured as a result of a head-on collision on U.S. Highway 54 about three miles east of Meade, Kansas.

The plaintiffs are: (1) Mr. and Mrs. Robert McCart, the surviving parents of Laura L. McCart; (2) Mr. and Mrs. Monte Finke, the surviving parents of Cheryl A. Finke and Keith A. Finke; and (3) Mr. and Mrs. Ricky Rickers, the surviving parents of Eric Rickers, and the parents of Colby Rickers, who was the sole survivor.

The defendant, William G. Muir, is the father of Stephen Muir. Stephen Muir was the driver of one of the vehicles involved in the accident. The mother of Stephen was first joined as a defendant but was dismissed from the action at the close of plaintiffs' evidence. Jury verdicts were returned in favor of the respective plaintiffs.

The brief of the defendant-appellant lists nine trial errors and then proceeds to brief eight points under headings different from the original nine trial errors listed. The consolidated brief of the appellees is divided into five headings which fail to address at least three of the eight points discussed by appellant. We have experienced some little difficulty in sorting out the dispositive points on appeal and in finding where in the respective briefs the points are discussed. Out of this confusion of points appear three primary areas of law to be considered by this court on appeal: (1) Negligent entrustment, (2) comparative negligence in negligent entrustment cases, and (3) the nature and amount of damages

allowable under the provisions of K.S.A. 60-1903, effective July 1, 1975. We turn to the facts.

At the time of the accident, Stephen Muir, the 17-year-old son of defendant William G. Muir, was driving a 1974 Plymouth Roadrunner automobile. The title to this car was in the name of Stephen and his father as co-owners. The father had co-signed the loan documents to enable Stephen to purchase the car. Riding with Stephen were Laura L. McCart, age 16 years, and James Downing, age 26 years.

Approximately three miles east of Meade, Kansas, on U.S. Highway 54, Stephen Muir's vehicle crossed the center line of the highway and struck another vehicle being driven by Cheryl A. Finke, age nineteen. Cheryl's vehicle was occupied by her younger brother, Keith A. Finke, age 14 years; her nephew, Eric Rickers, age four years; and her niece, Colby Rickers, age two years. All occupants of the two vehicles were killed except two-year-old Colby Rickers. Colby sustained serious physical injuries.

The results of blood tests indicated that Stephen Muir's blood had an alcohol content of .22 percent, and Cheryl Finke's blood indicated no alcohol content. Evidence introduced at the trial established that Stephen Muir had been involved in four vehicular accidents within six months prior to the fatal accident. Within four months prior to the fatal accident Stephen had received three traffic citations for moving violations—speeding, careless driving, and reckless driving. During this same period, Stephen had dropped out of high school. The evidence at trial established that Stephen was tried and convicted for reckless driving, which conviction was entered within five days of this fatal accident. He was fined $50.00 in the Municipal Court of Liberal, Kansas.

Appellant contends that the plaintiffs failed to establish the necessary elements of negligent entrustment. A claim of negligent entrustment is based upon knowingly entrusting, lending, permitting, furnishing, or supplying an automobile to an incompetent or habitually careless driver. *Fogo, Administratrix v. Steele,* 180 Kan. 326, 304 P.2d 451 (1956); *Neilson v. Gambrel,* 214 Kan. 339, 342, 520 P.2d 1194 (1974). An incompetent driver is one, who by reason of age, experience, physical or mental condition, or known habits of recklessness, is incapable of operating a vehicle with ordinary care. This definition of an incompetent

driver is deduced from our prior cases including *Priestly v. Skourup,* 142 Kan. 127, 45 P.2d 852, 100 A.L.R. 916 (1935); and *Richardson v. Erwin,* 174 Kan. 314, 255 P.2d 641 (1953).

Defendant asserts he did not know or have reasonable cause to know that Stephen was an incompetent, careless, or reckless driver. However, by his own admission he was aware of three of the accidents in which Stephen was involved as the driver. Defendant's wife testified that she had warned Stephen of the dangers of drinking intoxicants and driving. The wife further testified that she told Stephen if he had anymore wrecks that she was "going to make him park the car." Stephen was living with his parents in Liberal, a city of 14,000 people.

Under the evidence all elements of liability for negligent entrustment were shown: (1) The father, as co-signer on the automobile finance papers and as co-owner on the certificate of title, was instrumental in furnishing the motor vehicle to his son, Stephen, (2) the father knew or should have known Stephen was an incompetent driver, and (3) the negligence of Stephen in operating the vehicle was a cause of the damages.

Stephen was not an emancipated child. He remained under the control of his parents. The automobile was being operated with the permission of the father. It is inconceivable that the father did not know of the wrecks and prior convictions on moving violations.

It should be noted here that plaintiffs settled their claims against the estate of Stephen Muir for undisclosed sums.

In the case at bar, the petition sets forth claims against the father, William G. Muir, based on the theory of negligent entrustment and sets forth the negligent acts of the son in driving the car. The defendant, William G. Muir, in his answer, denies negligence on the part of himself and of his son, and alleges "if the plaintiffs have suffered any damages as a result of negligence, this negligence was that of the plaintiffs or third persons presently unknown to these defendants."

The defendant at trial requested that the court instruct the jury and submit the case on the theory of comparative negligence. Defendant submitted requested comparative negligence instructions taken from PIK Civ. 2d 20.01 and 20.02 (1977). Neither these instructions nor the requested verdict forms suggested by PIK Civ. 2d 20.03 (1977) were used to cover the comparative fault

theory of liability. The court unequivocally stated: "I am not going to give an instruction on comparative negligence." In this we believe the trial court erred.

"The intent and purpose of the legislature in adopting K.S.A. 60-258a was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault." *Brown v. Keill,* 224 Kan. 195, Syl. ¶ 6, 580 P.2d 867 (1978).

In our present case the fact that the plaintiffs have settled with Stephen Muir's estate does not prevent the defendant from obtaining a determination of Stephen's proportionate fault in the occurrence which gave rise to the injuries and damages. In *Brown v. Keill,* 224 Kan. 195, Keill had settled her claim against the son who was driving his father's car. In an action brought by the father to recover for damage to his car, it was held the negligence of all parties was to be taken into consideration. It was determined the driver son was guilty of 90% of the causal negligence and the defendant Keill was responsible for 10%. Judgment was awarded to the father for 10% of the damages to be paid by Keill.

*Eurich v. Alkire,* 224 Kan. 236, 579 P.2d 1207 (1978), was a negligent entrustment case in which no question was raised concerning the applicability of comparative negligence. It was assumed it applied. The owner of the car was found to be 60% at fault for negligently entrusting the car to an intoxicated driver. The driver was found to be 40% at fault for the occurrence. The driver of the second car was found to be free of causal fault or negligence. In *Eurich* it is said:

"As pointed out in *Brown,* the Kansas comparative negligence act is a multipurpose act which goes far beyond a basic comparison of the contributing negligence of each of the parties to the cause of an accident or injury. The act comprehensively provides machinery for drawing all possible parties into a lawsuit to fully and finally litigate all issues and liability arising out of a single collision or occurrence, and apportion the amount of total damages among those parties against whom negligence is attributable in proportion to their degree of fault." 224 Kan. at 237.

In *Miles v. West,* 224 Kan. 284, 287, 580 P.2d 876 (1978), it is pointed out:

"The fact plaintiffs are without fault does not prevent the application of the comparative negligence act when the comparative negligence of two or more parties must be determined."

It has been suggested by the appellees that the liability of the father in this case, as the negligent entruster, is a vicarious type of liability based upon the relationship existing between father and son whereby the son's negligence is imputed to the father. We do not agree.

In *Upland Mutual Insurance, Inc. v. Noel,* 214 Kan. 145, 151, 519 P.2d 737 (1974), Mr. Justice Prager speaking for this court points out:

"The rationale of the 'negligent entrustment' cases is not founded upon the negligence of the driver of the automobile but upon the *primary* negligence of the entruster in supplying the chattel, an automobile, to an incompetent and reckless driver."

See also *Neilson v. Gambrel,* 214 Kan. 339, 342, and 7A Am. Jur. 2d, Automobiles and Highway Traffic § 644, p. 873. In *Neilson* it is pointed out that although a negligent entrustment action is dependent upon the establishment of negligence on the part of the person to whom the automobile is entrusted, liability in a negligent entrustment case is not founded upon the negligence of the driver of the automobile but upon the primary negligence of the entruster in supplying the chattel, an automobile, to an incompetent and reckless driver. The nature and extent of negligence of the entruster and of the entrustee are separate and distinct. The percentages of fault may be different in amount and should be determined separately.

In addition, in a comparative negligence action K.S.A. 60-258a(*a*) provides:

"If any such party is claiming damages for a decedent's wrongful death, the negligence of the decedent, if any, shall be imputed to such party [claimant]."

So in this case each of the plaintiffs who are claiming damages for the wrongful death of their children will have any negligence attributable to their respective children imputed to them. Therefore, the percentage of causal fault, if any, must be determined for all parties to the occurrence, *i.e.,* both drivers, any passenger who by evidence at the trial may have been negligent, and the defendant-entruster.

The courts in Wisconsin apply comparative negligence principles to negligent entrustment cases arising under a Wisconsin statute, § 343.45, which prohibits a person from knowingly permitting his child or ward under 18 years of age to operate a motor vehicle when said child or ward is not authorized by law to do so.

In *Kempf v. Boehrig,* 95 Wis. 2d 435, 290 N.W.2d 562 (1980), the appellate court in Wisconsin affirmed a verdict finding the minor son 35%, the father 60%, and plaintiff 5% causally negligent in an accident. The father knowingly permitted the son to operate a motorcycle in violation of the Wisconsin statute.

During oral argument the case of *Jacobson v. Parrill,* 186 Kan. 467, 351 P.2d 194 (1960), was urged on this court as supporting the position of the trial court in refusing to submit the case to the jury on the theory of comparative negligence. Comparative negligence was first adopted in this state 14 years after the *Jacobson* case was decided. Appellees' reliance on *Jacobson* is misplaced. In *Jacobson,* because of the doctrine of respondeat superior which applies in the case of a principal and agent, the liability of Parrill for the negligence of his agent was held to be joint and several. The responsibility of Parrill was imputed. This is not the present case. As pointed out in *Jacobson:*

"Had the petition alleged Parrill committed some independent or concurrent tortious act contributing to the death of Jacobson, his liability to the plaintiff would have been direct, and not imputed under the doctrine of *respondeat superior.*" 186 Kan. at 474.

In the case at bar the father's liability was direct, separate, and not imputed. *Upland Mutual Insurance, Inc. v. Noel,* 214 Kan. 145.

The plaintiffs settled their claims against the estate of Stephen Muir. By giving the jury an opportunity to consider Stephen's causal negligence, the causal negligence of the other driver, the causal negligence of the occupants of the two cars, and that of the defendant, the intent and purpose of the legislature in adopting K.S.A. 60-258a will be served. Individual liability for damages based on the proportionate fault of all parties to the occurrence can be determined even though Stephen Muir's liability to plaintiffs has been settled. His proportionate fault when determined as a percentage of the total fault will serve to balance the proportionate fault of the defendant and of the others. The trial court erred in refusing to submit the case on the theory of comparative negligence. The case must be remanded for a new trial. However, we will consider other points which may rise again on any subsequent trial of this case.

What is the nature and amount of damages allowable under the provisions of K.S.A. 60-1903, effective July 1, 1975?

The verdict returned in the present case reads:

"VERDICT

"We, the jury, impanelled and sworn in the above-entitled case, do, upon our oaths, find for the plaintiffs and assess the plaintiffs' recovery in the following sums:

"Montie Finke and Thelma Finke: $100,000

"Richard Rickers and Mary Rickers $25,000

"Colby Rickers: $ 15,000

"Robert McCart and Betty Jo McCart $50,000

s/ Kent Davis

Foreman"

The sum of $100,000.00 was allowed to the parents of Keith and Cheryl Finke for the wrongful deaths. This single amount covered both deaths. The sum of $25,000.00 was allowed for the wrongful death of Eric Rickers. The sum of $15,000.00 was allowed for the injuries and suffering of Colby Rickers, and $50,000.00 was allowed to the parents of Laura McCart for her wrongful death. These amounts cover both pecuniary and non-pecuniary loss without separating nonpecuniary loss.

The wrongful death statute in effect at the time of these deaths provided:

"In any such action, the court or jury may award such damages as are found to be fair and just under all the facts and circumstances, but the damages, other than pecuniary loss sustained by an heir at law, cannot exceed in the aggregate the sum of twenty-five thousand dollars ($25,000) and costs." K.S.A. 60-1903.

Another section of the statute lists the elements of damages which are recoverable:

"Damages may be recovered for, but are not limited to: mental anguish, suffering, or bereavement; loss of society, companionship, comfort, or protection; loss of marital care, attention, advice or counsel; loss of filial care or attention; and loss of parental care, training, guidance, or education, and the reasonable funeral expenses for the deceased. If no probate administration for the estate of the deceased has been commenced, expenses for the care of the deceased which resulted from the wrongful act may also be recovered by any one of the heirs who paid or became liable for the same. Such expenses and also any amount recovered for funeral expenses shall not be included in the limitation of K.S.A. 60-1903." K.S.A. 60-1904.

On reading the statute certain questions come to mind. The statute treats pecuniary loss and nonpecuniary loss differently. K.S.A. 60-1903 places a limitation of $25,000.00 on nonpecuniary loss arising from a wrongful death. No dollar limitation is placed on pecuniary loss. A court or jury may award such damages for pecuniary loss as are found to be fair and just under all the facts

and circumstances. We find no cases which discuss this particular section of the law which became effective July 1, 1975.

In examining the verdict or verdicts in the present case, it is apparent there is no way an appellate court can determine whether there was compliance with the dollar limitation imposed by the statute. One additional question is raised with regard to the single sum of $100,000.00 allowed for the wrongful deaths of both Keith Finke and Cheryl Finke. Can we presume or is it mere speculation to say that half of the total sum was allowed for each wrongful death? The question answers itself; it would be mere speculation. The jury award should have been separate for each wrongful death.

K.S.A. 60-1904 sets forth mixed elements of damage, both nonpecuniary and pecuniary, which may be recovered, but the statute specifies that damages are not limited to those items mentioned. Nonpecuniary damages generally are intangible in nature such as mental anguish, bereavement, loss of society and loss of companionship. These are listed along with pecuniary damages, such as loss of care, funeral expenses, and other personal expenses arising from the accident.

Pecuniary damages are "[s]uch as can be estimated in and compensated by money; . . . all such loss, deprivation, or injury as can be made the subject of calculation and of recompense in money." Black's Law Dictionary 469 (4th ed. rev. 1968). A pecuniary loss has been defined as a loss of money or of something by which money or something of money value may be acquired. 22 Am. Jur. 2d, Damages § 1, p. 14. Pecuniary loss or damages in a wrongful death case should be equivalent to those pecuniary benefits or compensation that reasonably could have been expected to have resulted from the continued life of the deceased. *Ches. & Ohio Ry. v. Kelly,* 241 U.S. 485, 489, 60 L.Ed. 1117, 36 S.Ct. 630 (1916).

The separate treatment of pecuniary and nonpecuniary damages first appeared in K.S.A. 60-1903 in 1975. Prior to 1967 a limitation of $25,000.00 was placed on the amount recoverable, except for funeral expenses and for expenses in caring for the deceased after the accident which were in addition to the stated limit. Our cases indicate the limitation in the pre-1975 statutes applied to both pecuniary and nonpecuniary loss. In 1967, the legislature increased the limit from $25,000.00 to $35,000.00. In

1970, the legislature increased the $35,000.00 limit to $50,000.00. Then in 1975, the provision relating to damages in the statute was changed and the limit was made applicable only to nonpecuniary damages and the limit was reduced for the first time in many years from $50,000.00 to $25,000.00. Pecuniary damages are now removed from the $25,000.00 limit and may be awarded without limitation. See Gard's Kansas C. Civ. Proc. 2d Annot. § 60-1903 (1979). An extensive note, *Damages for Wrongful Death in Kansas: Some Problems, Questions and Answers,* 17 Washburn L. J. 73 (1977), discusses some of the changes and problems arising from the changes in the 1975 law.

It is difficult to evaluate the cases from other states. See Annot., Damages - Death of Minor, 49 A.L.R.3d 934, 940. In some states there is a maximum statutory limitation covering both pecuniary and nonpecuniary damages. Other states have a limitation solely on nonpecuniary damages. But regardless of this split it is generally held that nonpecuniary damages can be recovered by the parents of a minor child even though such damages are largely speculative in character. Generally, no problem arises until the statutory limitation is lifted from pecuniary damages. Difficulties in the nature of proof of pecuniary damages then arise. Some of our prior case law will serve to illustrate the changes in proof necessary.

In *Bartlett v. Heersche,* 204 Kan. 392, 462 P.2d 763 (1969), this court mentions the difficulty of arriving at an exact dollar amount for pecuniary loss in the wrongful death of a child.

In *Roda v. Williams,* 195 Kan. 507, 514, 407 P.2d 471 (1965), the court stated:

"We recognize that the loss recoverable is not to be limited to pecuniary loss, some specific elements thereof being as set forth in K.S.A. 60-1904. Due to the intangible nature thereof no definite and precise rule can be applied and the matter of assessment of damages in a case such as this must necessarily be left to the judgment and common experience of the jury, to be guided by the facts and circumstances."

While no evidence of pecuniary loss was present in *Roda,* the jury award of $4,000.00 was upheld.

Our cases hold under our prior statutes that in the death of a minor living with his parents there is both an implication of pecuniary loss and an implication of loss due to bereavement and mental anguish, nonpecuniary loss. *Corman, Administrator v.*

*WEG Telephone, Inc.,* 194 Kan. 783, 787, 402 P.2d 112 (1965). See also *Burgert v. Tietjens,* 499 F.2d 1 (10th Cir. 1974).

In several of our older cases when the amount of the damages approached the statutory limit the court has taken a much closer view of the evidence bearing on pecuniary loss. See *Aaron v. Telephone Co.,* 89 Kan. 186, 131 Pac. 582 (1913); *Carl, Administratrix v. Ackard,* 114 Kan. 640, 220 Pac. 515 (1923); and *Hilliard v. Southern Kansas Stage Lines Co.,* 146 Kan. 288, 70 P.2d 28 (1937). In each of the above cases the awards were reduced.

From 1947 to 1975, the Kansas Wrongful Death Act set one limitation on the amount of damages recoverable which applied to both pecuniary and nonpecuniary losses. During this period the court, acting consistently with the statute, made no distinction between pecuniary and nonpecuniary losses when reviewing awards for wrongful death. As a result, the decisions interweave the standards of proof necessary to justify nonpecuniary losses with standards for pecuniary losses. During this period the court opinions ignored the strict guidelines for upholding awards of pecuniary loss established prior to the 1947 amendment of the Wrongful Death Act. Prior to 1947 only pecuniary damages were recoverable. With the 1947 amendment came the allowance of both pecuniary and nonpecuniary losses under a statutory limit. This court has since upheld substantial awards upon meager evidentiary showings of actual loss. Such a practice may continue in the future as to nonpecuniary loss which comes under the $25,000.00 limitation of the statute. However, the same practice would not seem proper with regard to pecuniary losses which now bear no limitation. With no statutory limitation on pecuniary losses some definite standards of proof must be required to support any award for substantial pecuniary losses.

Therefore, it would appear that separate treatment must now be given to pecuniary and nonpecuniary losses. Different standards of proof should be used in establishing these losses. No new standard or proof would appear necessary in case of nonpecuniary loss for our pre-1975 standards should suffice. For pecuniary losses, however, the elements and methods of proof must be more precise. The supporting evidence should establish some reasonable basis for an expectation of future monetary benefits and the evidence should further establish some reasonable method to arrive at the amount allowed for pecuniary loss. The pre-1947 cases in Kansas should be a helpful source of informa-

tion to draw on for the new standards of proof necessary to establish pecuniary loss under the present law.

Suffice it to say under the provisions of K.S.A. 60-1903 which now limit the nonpecuniary damages allowable in a wrongful death case to $25,000.00 and which now impose no limit on pecuniary damages, the jury must be required to separately state the amounts allowed for pecuniary loss and for nonpecuniary loss for each wrongful death. When the pecuniary loss allowed is substantial in amount, evidence in support thereof must have some reasonable basis in fact and can no longer be supported solely by an implication of pecuniary loss based on the severance of the parent-child relationship.

Another matter to be discussed in this opinion bears upon the insufficiency of the instructions and of the verdict form used in this case. It arises from the interplay between comparative negligence principles and the provisions of the wrongful death statute limiting the amount of nonpecuniary damages recoverable for a wrongful death.

If a party in a comparative negligence action is claiming damages for a decedent's wrongful death, the negligence, if any, of the decedent is imputed to such party-claimant. K.S.A. 60-258a(*a*). Under the comparative negligence statute and the case law construing the statute, each award to a plaintiff or to any claimant must be diminished in proportion to the percentage of negligence attributed to such party-claimant. K.S.A. 60-258a(*a*). So what is the effect to be given the provision in the wrongful death statute, K.S.A. 60-1903, which limits recovery for nonpecuniary loss of a decedent to $25,000.00? Should the percentage reduction of a claimant's award as required by subsection (*a*) of K.S.A. 60-258a be applied to the statutory limit specified in K.S.A. 60-1903 or should it be applied to the total nonpecuniary damages awarded by the jury?

For instance, suppose 30% fault is attributed to a decedent and in turn imputed to the claimant. Consider in that situation that the jury awards $100,000.00 nonpecuniary damages. How is the actual amount allowable to be determined when you must consider the statutory limitation of $25,000.00? Is the $25,000.00 to be reduced by the 30% fault which is attributed to decedent and in turn imputed to claimant? If so, the tortfeasor's 70% fault will afford a judgment for only $17,500.00. When 30% or $7,500.00 is

subtracted from the $25,000.00 limit only $17,500.00 remains. On the other hand, if the actual jury award for nonpecuniary damages of $100,000.00 is to be reduced first by the 30% fault of the decedent and claimant, the result would be $70,000.00. If this procedure is followed, the $25,000.00 maximum limit becomes the amount for which the others who contributed to cause the death will be liable.

The Minnesota court arrived at this latter result in *Olson v. Hartwig,* 288 Minn. 375, Syl., 180 N.W.2d 870 (1970), and held:

"In applying our comparative negligence statute, Minn. St. 604.01, in an action for death by wrongful act brought under Minn. St. 573.02, the percentage of plaintiff's decedent's negligence is to be deducted from the damages awarded by the court or jury rather than from the maximum permissible recovery permitted under § 573.02."

The federal district court for the district of Kansas in *Benton v. Union Pac. R. Co.,* 430 F. Supp. 1380 (D. Kan. 1977), in addressing this question, states:

"Accordingly, when the comparative negligence statute is called into play, we cannot say the wrongful death limitation was intended to be the measure of damages sustained. On the other hand, it clearly is a limitation on the amount of damages recoverable. Under all the circumstances we agree with the view expressed in *Olson,* that it is far more equitable to allow the plaintiff the opportunity to recover the statutory maximum than to further reduce her recovery. The injustice of allowing a plaintiff whose decedent was contributorily negligent to perhaps recover as much as a plaintiff whose decedent was not negligent seems slight, compared with the injustice of further reducing plaintiff's recovery, when her maximum recovery is already far less than her actual damages." 430 F. Supp. at 1386.

In *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 445, 581 P.2d 372 (1978), this court in considering the question said:

"We are not faced with the question of how the wrongful death statute's limitation interacts procedurally with the comparative negligence statute in this case. [Citations omitted.] It should be noted [however] under our wrongful death statute, the death limitation is *not* a measure of compensation. Instead, it is simply a limitation upon recovery."

See also *Mueller v. Silver Fleet Trucking Co.,* 254 Wis. 458, 37 N.W.2d 66 (1949).

In applying the comparative negligence statute, K.S.A. 60-258a, in an action for death by wrongful act brought under K.S.A. 60-1901 *et seq.,* the percentage of causal fault attributable to

decedent's negligence plus the percentage of additional causal fault attributable to any direct negligence of the plaintiff are to be deducted from the amount of damages awarded by the court or jury for nonpecuniary damages, rather than from the maximum permissible recovery for nonpecuniary damages allowable under K.S.A. 60-1903. As to pecuniary damages awarded the usual procedure for arriving at liability based on proportionate fault should be followed.

In summary, (1) there was sufficient evidence introduced to establish liability for a negligent entrustment, (2) comparative negligence principles apply under the facts of the present case to liability arising from negligent entrustment, and (3) the verdict forms in a wrongful death case should be such as to require a jury to separately determine pecuniary and nonpecuniary damages for each wrongful death.

All judgments entered on the verdict are set aside and the case is remanded for a new trial as to all plaintiffs.