(974 P.2d 604)

No. 79,102

RACHEL K. SNODGRASS, *Appellant,* v. BETTY D. BAUMGART and RAYMOND M. BAUMGART, *Appellees.*

Opinion filed January 8, 1999.

*Larry E. Gregg* and *John R. Hamilton*, of Hamilton, Gregg, Barker & Johnson, of Topeka, for appellant.

*Les E. Diehl*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellees.

Before BRAZIL, C.J., GREEN and KNUDSON, JJ.

GREEN, J.: Rachel K. Snodgrass appeals from a summary judgment granted in favor of Betty D. Baumgart and her husband, Raymond M. Baumgart. Snodgrass was injured in a car accident involving Betty. Snodgrass sued Betty for damages and later amended her action to include a claim for fraudulent conveyance of assets. Snodgrass also sued Raymond for negligent entrustment and fraudulent conveyance. The trial court granted summary judgment to Betty and Raymond on Snodgrass' claims of fraudulent conveyance. The trial court also granted summary judgment to Raymond on Snodgrass' claim of negligent entrustment.

On appeal, Snodgrass contends that the trial court inappropriately granted summary judgment to Raymond on her negligent entrustment claim. We disagree, holding that no negligent entrustment occurred when Raymond did not have a superior or exclusive right of control over the car. Snodgrass also contends that the trial court inappropriately granted summary judgment to Raymond and Betty on her fraudulent conveyance claims. We agree. Accordingly, we affirm in part, reverse in part, and remand for trial on the fraudulent conveyance claims.

When a car driven by Betty collided with a car in which Snodgrass was a passenger, Snodgrass received severe injuries requiring several weeks of hospitalization. Betty later pled no contest to one count each of aggravated battery and driving while under the influence of alcohol.

On May 5, 1995, Snodgrass sued Betty for negligence. The petition was personally served on Betty on May 10, 1995. One day later, Raymond sued Betty for divorce. Betty and Raymond later entered into a separation and property settlement agreement which was approved by a different trial judge. They were divorced in early June 1995.

In February 1996, Snodgrass amended her petition to include a claim against Raymond for negligent entrustment. It also included a claim against Betty and Raymond for fraudulent conveyance relating to the property settlement.

Snodgrass first argues that the trial court inappropriately granted summary judgment to Raymond on her negligent entrustment claim. In her suit against Betty and Raymond, Snodgrass claimed that Raymond negligently supplied Betty with the car, which he knew she was incapable of driving with ordinary care. Snodgrass alleged that Raymond was negligent because Betty was intoxicated when he entrusted her with the car. The trial court noted that Betty and Raymond were husband and wife at the time of the accident. Further, they co-owned the car involved in the accident. The trial court ruled Raymond could not, as a matter of law, be held liable for negligently entrusting the co-owned car and granted summary judgment in his favor.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

"A claim of negligent entrustment is based upon knowingly entrusting, lending, permitting, furnishing, or supplying an automobile to an incompetent or habitually careless driver." *McCart v. Muir*, 230 Kan. 618, 620, 641 P.2d 384 (1982). In *Pennington v. Davis-Child Motor Co.*, 143 Kan. 753, 757, 57 P.2d 428 (1936), our Supreme Court recognized that negligent entrustment could occur when an entruster knowingly supplies a car to an intoxicated person who thereafter harms a third person.

This case is distinguishable from several other well-recognized negligent entrustment cases. See *Fogo, Administratrix, v. Steele*, 180 Kan. 326, 304 P.2d 451 (1956); *Richardson v. Erwin*, 174 Kan. 314, 255 P.2d 641 (1953); *Priestly v. Skourup*, 142 Kan. 127, 45 P.2d 852 (1935). All three of these cases involved a situation where an owner of a car loaned the car to someone whom the lender knew was an incompetent, careless, and reckless driver. The lender in those cases had a superior right of control over the car. Here, Raymond and Betty were joint owners of the car involved in the collision. As a result, neither Raymond nor Betty enjoyed a superior right of control over the car.

*McCart* examined whether a father could be held liable for negligent entrustment where he permitted his minor son to drive a car he and his son jointly owned. In *McCart*, the son, while driving

the car, was involved in an accident which resulted in multiple fatalities. The evidence indicated the son had been involved in numerous accidents, had received several citations for moving violations, and had been convicted of reckless driving a few days before the accident.

In determining that the evidence produced at trial established the father was liable for negligent entrustment, our Supreme Court stated:

"Under the evidence all elements of liability for negligent entrustment were shown: (1) The father, as co-signer on the automobile finance papers and as co-owner on the certificate of title, was instrumental in furnishing the motor vehicle to his son, Stephen, (2) the father knew or should have known Stephen was an incompetent driver, and (3) the negligence of Stephen in operating the vehicle was a cause of the damages.

"Stephen was not an emancipated child. He remained under the control of his parents. The automobile was being operated with the permission of the father." 230 Kan. at 621.

In minimizing the joint ownership issue in this case, *McCart* stressed the control that the father had over his son. The *McCart* court pointed out that although the father and the son were joint owners of the car, the father was "instrumental in furnishing" the car to his son. 230 Kan. at 621. The court further noted that the son was a minor and was not emancipated. The court stated that the son remained under the control of his parents. Consequently, the court concluded that the son was operating the car with his father's permission.

Nevertheless, because Betty and Raymond were joint owners of the car and were entitled to equal use and possession of the car, the essential control factor is missing in this case. The control factor has been emphasized in the Restatement (Second) of Torts.

"One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." Restatement (Second) of Torts § 390 (1964).

In comment b following this section, it is noted that § 390 is a special application of § 308. Section 308 states:

"It is negligence to permit a third person to use a thing . . . which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing . . . in such a manner as to create an unreasonable risk of harm to others." Restatement (Second) of Torts § 308 (1964).

Furthermore, comment a of § 308 states:

"The words 'under the control of the actor' are used to indicate that the third person is entitled to possess or use the thing . . . only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity."

Because Betty shared an equal right to use and to possess the car with her husband, Raymond, no negligent entrustment could occur. Raymond lacked a superior or exclusive right of control over the car.

Other courts that have visited this issue have determined that a negligent entrustment action will fail where a car is co-owned by spouses or a parent and adult child. In *Zedella v. Gibson*, 165 Ill.2d 181, 650 N.E.2d 1000 (1995), the court examined a negligent entrustment action against the father of a 23-year-old son, with whom he co-owned a car. The court, relying in part on the Restatement (Second) of Torts § 308 and the comment following, determined that no negligent entrustment could occur where the actor did not have a superior or exclusive right of control over the car.

In *Neale v. Wright*, 322 Md. 8, 585 A.2d 196 (1991), the court evaluated a negligent entrustment action brought against a woman whose husband was involved in an accident in their co-owned car where the husband was excluded from the automobile insurance policy. The court rejected the argument that the wife entrusted the car to her husband. She had no power to prohibit him from using the vehicle. The *Neale* court distinguished the case from the *McCart* case on the basis that the *McCart* case involved a parent-child relationship and not a spousal relationship. As a result, Snodgrass' argument fails.

Next, Snodgrass argues that the trial court inappropriately granted summary judgment to Raymond and Betty on her fraudulent conveyance claims. Snodgrass contends that under Betty and Raymond's separation and property settlement agreement, Ray-

mond received the bulk of their assets and Betty was left with negligible assets.

Snodgrass sued Betty on May 5, 1995. On May 10, 1995, Betty was personally served with Snodgrass' suit. On May 11, 1995, Raymond filed a petition for an emergency divorce. On May 24, 1995, Betty and Raymond entered into a property settlement agreement.

The property settlement awarded Raymond the following: all farm equipment and tools; all livestock; a 1988 Ford pickup truck; built-in household appliances; all financial accounts in Raymond's name; his personal effects; an 80 acre tract of land; a 60 acre tract of land; and a 160 acre tract of land and the residence thereon. Betty was awarded: 82 shares of Kroger stock; her Kroger retirement and benefit accounts; 168 shares of Mercantile Bank stock; her retirement and benefit accounts with Mercantile Bank; all household furnishings not built in (valued at several thousand dollars); all financial accounts in her name (valued at $500); and her personal effects. In addition Raymond agreed to pay Betty $500 a month until he had paid her $10,000.

Before the divorce, Raymond prepared a domestic relations affidavit. He listed his monthly income as an $18,000 loss. The affidavit indicated liabilities in the amount of $250,000 and assets in the amount of $22,253 for a negative net worth of $227,747. However, late in 1993, Betty and Raymond reported on a financial statement a positive net worth of approximately $423,960. In 1996, Raymond reported on a financial statement a positive net worth of approximately $385,904.

On June 8, 1995, Raymond told his banker the divorce was final. Raymond also requested that Mercantile Bank acquire a mortgage on the 60-acre and 80-acre tracts of land which were not subject to any previous mortgages. Although the reasons for these mortgages are disputed, no new loan was made at the time the mortgages were taken.

The trial court noted that the property settlement was deemed by another judge to be " 'fair, just and equitable.' " The trial court observed that district court proceedings are entitled to a presumption of regularity. Based on that, the trial court determined that absent a showing to the contrary, the journal entry approving the

property settlement agreement is final and conclusive as to the issues involved.

Next, the trial court determined that Snodgrass did not present evidence that would suggest that any of the property awarded to Raymond would have been subject to execution. The trial court reasoned that the "majority" of property awarded to Raymond was already subject to liens of creditors or was statutorily exempt. Finally, the trial court stated Snodgrass produced no evidence suggesting the divorce was entered into in an effort to transfer assets out of the reach of Snodgrass. The trial court relied on the fact that the petition for divorce was signed 1 day before the civil suit and that Betty signed an entry of appearance in the divorce action on the same day.

To establish fraudulent conveyance, one must generally prove two things. First, the grantor must be shown to have intended to hinder, delay, or defraud his or her creditors. Second, the grantee must be shown to have participated in or have constructive or actual knowledge of the fraudulent scheme. *City of Arkansas City v. Anderson*, 15 Kan. App. 2d 174, 180, 804 P.2d 1026, *rev. denied* 248 Kan. 994 (1991).

Our Supreme Court has recognized six badges or indicia of fraud:

" '(1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures.' " *Koch Engineering Co. v. Faulconer*, 239 Kan. 101, 105, 716 P.2d 180 (1986) (quoting *Credit Union of Amer. v. Myers*, 234 Kan. 773, 778, 676 P.2d 99 [1984]).

Although the trial court determined that since the property settlement agreement was " 'fair, just and equitable,' " this precluded Snodgrass from attacking the property settlement as fraudulent, we disagree. The property settlement determined how the marital estate would be divided. Although the property agreement was binding between Betty and Raymond, the agreement was not immune from an attack by a creditor such as Snodgrass. Because Snodgrass claimed that the property agreement was entered into

to hinder, delay, or defraud her, the earlier domestic proceeding offered no protection from such a challenge.

Next, we turn our attention to whether any evidence existed that Betty and Raymond's actions were fraudulent. Betty and Raymond were married to one another when they entered into the property settlement agreement. The evidence suggests Betty and Raymond may have known or anticipated Snodgrass' lawsuit. As early as April, Snodgrass' attorney made a formal demand to Betty and Raymond's insurance company for policy limits. Furthermore, the civil suit was filed by Snodgrass before the divorce action was filed.

Betty's assets dramatically decreased as a result of the property settlement. The acreage and residence alone has been valued at approximately $266,000. Livestock owned by Raymond has been valued at $124,392. Betty gained very few assets as a result of the property settlement agreement. Raymond maintained ownership over the majority of the marital assets. As a result, the trial court erred in granting summary judgment on the fraudulent conveyance claims.

Affirmed in part, reversed in part, and remanded.