Marvin HUENINK, Plaintiff,

v.

Thomas RICE, d/b/a Rice Motors, and John Young, d/b/a Salina Auto Auction, Defendants.

Civ. A. No. 92–4100–DES.

United States District Court, D. Kansas.

July 15, 1994.

Jack A. Quinlan, Scott, Quinlan & Hecht, Topeka, KS, Kenneth Cobb, Cobb, Hallinan & Ehrlich, P.C., Lincoln, NE, for plaintiff.

C. Stanley Nelson, Debra E. James, Hampton, Royce, Engleman & Nelson, Salina, KS, Wayne T. Stratton, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

## I. INTRODUCTION

This matter is before the court on the summary judgment motion (Doc. 100) of defendant Thomas M. Rice, d/b/a Rice Motors. This is a negligence action arising out of an automobile accident that occurred on the grounds of the Salina Auto Auction when a 1983 Chevrolet Monte Carlo, brought to the auction by Mr. Rice, and driven by an employee of defendant John Young, collided with the rear of a 1985 Pontiac Firebird, allegedly injuring plaintiff Marvin Huenink. Plaintiff Huenink and defendant Young oppose defendant Rice's motion.

After examining the parties' factual submissions and legal memoranda, and for the reasons set forth herein, the court grants in part and denies in part defendant Rice's motion for summary judgment (Doc. 101).

## II. BACKGROUND

The pertinent facts established by the parties in accordance with District of Kansas Rule 206(c) are as follows:

1. On August 31, 1990, Mr. Rice was the sole proprietor of a used car business, Rice Vantastics, in Kensington, Kansas. At that time, he had been in the car business for eight years.

2. On August 31, 1990, Mr. Young was the sole proprietor of an auto auction, the Salina Auto Auction ("Auction"), in Salina, Kansas. He had been in the auction business at the same location since February of 1980.

3. Dealers brought vehicles to the Auction and left them for sale day. In August of 1990, the Auction neither took title to, nor inspected the mechanical condition of, the vehicles consigned for sale.

4. On July 27, 1989, Mr. Rice purchased a 1983 Chevrolet Monte Carlo, identification No. 1G1AZ3796DR235075, from the Auction. He intended to resell the Monte Carlo on his lot in Kensington, Kansas.

5. The Monte Carlo remained on Mr. Rice's lot for more than one year. During this time, Mr. Rice occasionally drove the vehicle. He never experienced any mechanical difficulty while driving it.

6. Paul Wisinger, a trained mechanic formerly employed by Mr. Rice, drove the Monte Carlo between 30 and 40 times in the year prior to August 31, 1990. He never experienced any mechanical difficulty while driving it.

7. Prior to August 31, 1990, neither Mr. Rice nor Mr. Wisinger learned of any accelerator problems with the Monte Carlo.

8. On August 31, 1990, Mr. Rice and his wife took the Monte Carlo from Kensington to the Auction. Mrs. Rice drove the Monte Carlo. No one accompanied her in the vehicle. Mr. Rice drove another car.

9. During the trip to Salina, Mrs. Rice noticed no mechanical difficulties. Specifically, she noticed no problems with the accelerator.

10. Prior to the beginning of the sale, Lester Headley, an employee of the Auction, started the Monte Carlo with no apparent difficulty. Later, Herbert Walle, another employee of the Auction, drove the vehicle toward its place in the auction line.

11. When Mr. Walle got into the vehicle, he depressed the accelerator pedal. After he depressed the pedal, the pedal pulled itself down toward the floorboard. Mr. Walle immediately hit the brakes and killed the car. Since he "knew there was something wrong with the accelerator," when he restarted the Monte Carlo he did not depress the accelerator but idled the vehicle around the Auction building and into its place in line.

12. On August 31, 1990, Mr. Walle was a temporary employee. He had been working at the Auction for two days. He does not remember being given directions as to what he should do if a vehicle seemed to malfunction during a sale.

13. Once he placed the vehicle in line, Mr. Walle left the engine running and got out. As he walked away, he looked back over his shoulder and warned Mr. Headley to watch the accelerator because it was sticking. Mr. Headley did not respond. Mr. Walle was not facing Mr. Headley and does not know if Mr. Headley heard him.

14. After Mr. Walle left, Mr. Headley stepped into the Monte Carlo. The auctioneer signalled him to pull the vehicle forward in line behind a Pontiac Firebird. Mr. Headley put the vehicle in drive and depressed the accelerator. The accelerator "stuck" and the car "jumped." As soon as he realized the vehicle was accelerating, Mr. Headley applied the brakes. However, before he applied the brakes, the Monte Carlo hit the Pontiac Firebird.

15. As part of his investigation of the accident, Officer Harvey Kutschka, a law enforcement officer with the Salina Police Department, measured ten feet of accelerating tire marks behind the Monte Carlo.

16. Following the accident, Mr. Young had someone restart the Monte Carlo. The accelerator did not stick. The vehicle was then turned off and pushed out of the building.

17. After it had been pushed outside, Mr. Rice inspected the Monte Carlo. He restarted the vehicle and tried to make the accelerator stick. However, the accelerator would not stick.

18. Mr. Rice drove the Monte Carlo from the Auction to Kensington. During the trip, he experienced no problems with the accelerator.

19. Once in Kensington, Mr. Rice again examined the vehicle but found no mechanical problems. He also had his mechanic, Mr. Wisinger, examine the vehicle. Mr. Wisinger found nothing.

20. In July of 1991, Mr. Rice sold the Monte Carlo at an auction in Colorado. During the year between the accident and the sale in Colorado, Mr. Rice remembers one incident where the cruise control "wanted to surge." However, during this time he neither experienced nor learned of any problems with the accelerator sticking.

## III. *SUMMARY JUDGMENT STANDARDS*

 A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). The substantive law identifies which issues are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

 The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53. Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1985). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to the interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Rule 56(e)).

■ Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

■ A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block,* 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues").

■ The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

## IV. *DISCUSSION*

In this action, plaintiff claims that defendant Rice is liable for his own independent negligent acts and vicariously liable for the negligence of defendant Young and Young's employees. Mr. Rice moves for summary judgment arguing that there is (1) no genuine issue of material fact regarding plaintiff's claims of "independent negligence," and (2) no basis for holding him vicariously liable for the negligence of Mr. Young and his employees.

### A. *"Independent Negligence"*

■ To recover for negligence under Kansas law, plaintiff must prove duty, breach, proximate cause, and injury. *McDermott v. Midland Management, Inc.,* 997 F.2d 768, 770 (10th Cir.1993); *McGee By and Through McGee v. Chalfant,* 248 Kan. 434, 806 P.2d 980, 982–83 (1991). In the pretrial order, plaintiff contends that Mr. Rice negligently attempted to sell a vehicle with a dangerous defective mechanical condition of which he knew or should have known and failed to warn Mr. Young of that condition. Mr. Rice moves for summary judgment arguing as follows: (1) plaintiff can neither identify nor demonstrate a specific defect in the Monte Carlo; (2) plaintiff cannot demonstrate that Mr. Rice knew or should have known of the alleged defect prior to the August 31, 1990, accident; and (3) plaintiff cannot show that the alleged defect was the proximate cause of his injuries.

### 1. Specific Defect

Mr. Rice argues that there is no evidence of a specific defect in the Monte Carlo. By extension, his argument seems to be that since plaintiff's theories of independent negligence are founded on acts or omissions regarding a specific defect, and since there is no evidence of a specific defect, he is entitled to summary judgment.

In support of his motion, Mr. Rice cites portions of the record in which he, his wife, and Mr. Wisinger each testify that they drove the Monte Carlo, but never noticed any defect in the accelerator. In opposition, plaintiff and defendant Young point to portions of the record in which Mr. Walle and Mr. Headley testify that they both experienced a problem with the vehicle's accelerator.

The record reflects that Mrs. Rice drove the Monte Carlo to the Auction. There is no evidence that anyone came into contact, or had the opportunity to come into contact, with the vehicle until Mr. Headley originally started it. Later, when Mr. Walle started the vehicle to pull it into line, he noticed that the accelerator pulled toward the floorboard after he depressed it with his foot. Indeed, in his deposition he stated that the accelerator "went clear to the floor." Because Mr. Walle "knew there was something wrong with the accelerator," he idled the vehicle around the building and placed it in line. There is no evidence anyone came into contact with the vehicle after Mr. Headley got out until Mr. Walle got in. After placing the vehicle in line, Mr. Walle got out and Mr.

Headley got in. Once in the vehicle, Mr. Headley depressed the accelerator which then "stuck" and the car "jumped." That is, Mr. Headley testified that he experienced a similar difficulty with the vehicle's accelerator. Before he could hit the brakes, the vehicle collided with the rear of the Pontiac Firebird immediately in front of it in line. Again there is no evidence that anyone came into contact with the vehicle after Mr. Walle got out until Mr. Headley got in. After the accident, Officer Kutschka measured ten feet of accelerating skid marks.

Mr. Rice argues that Mr. Walle and Mr. Headley's testimony is legally insufficient to establish that the vehicle was defective and, thus, cannot defeat his motion for summary judgment. In support, Mr. Rice relies on *Butterfield v. Pepsi–Cola Bottling Co. of Wichita*, 210 Kan. 123, 499 P.2d 539, 542 (1972). Specifically, he argues that *Butterfield* requires the court to discount Mr. Walle and Mr. Headley's testimony as evidence that the vehicle had a defective accelerator. Even assuming *Butterfield* is applicable to the instant negligence action, the court disagrees.

In *Butterfield*, plaintiff sued Pepsi–Cola Bottling Company for breach of the implied warranty of fitness when a bottle of Pepsi burst causing her various injuries. The jury found for defendant. Plaintiff argued that she was entitled to a directed verdict against defendant because she had shown that a Pepsi bottle exploded injuring her. The Kansas Supreme Court rejected her argument. Specifically, the Court held that her evidence, that a bottle exploded injuring her, did not require the trial court to direct a verdict. Contrary to Mr. Rice's argument, the Court did not hold that her evidence was legally insufficient to support an inference that the bottle was defective.[1] The Court's opinion iterated the requirement that a plaintiff show a defect and its holding merely

reflected that there was sufficient evidence at trial from which the jury reasonably could infer that the bottle had not been defective when it left the manufacturer's possession. The Court's holding does not, as Mr. Rice argues, require the court to discount completely Mr. Walle and Mr. Headley's testimony as evidence of a possible defect in the Monte Carlo.

When evaluating a motion for summary judgment the court is to believe the nonmovant's evidence and draw all justifiable inferences in favor of that party. *Petroleum Products, Inc. v. Total Petroleum, Inc.*, 795 F.Supp. 356, 358 (D.Kan.1992), *aff'd*, 986 F.2d 1428 (10th Cir.1993); *Williams v. Kansas Gas & Elec. Co.*, 805 F.Supp. 890, 893 (D.Kan.1992). The court is not to make credibility determinations, weigh evidence, or draw "legitimate" inferences from facts. *Id.* Thus, when evaluating Mr. Rice's motion, the court must believe Mr. Walle and Mr. Headley's testimony, draw all justifiable inferences in favor of the nonmovants, and refrain from making credibility determinations and weighing the evidence. Adhering to these standards, the court cannot agree with Mr. Rice's contention that there is no genuine issue as to whether the Monte Carlo was defective. The evidence is clear that shortly after the Rice's relinquished control of the vehicle to the Auction, two of Mr. Young's employees experienced problems with the accelerator pulling toward the floorboard. Both employees testified that the vehicle accelerated even though they did not apply additional pressure to the pedal. During his investigation following the accident, Officer Kutschka measured ten feet of accelerating tire marks behind the Monte Carlo. The court finds there is more than a scintilla of evidence in support of plaintiff's position. Specifically, the court finds that there is sufficient evidence from which a jury reasonably could infer that the Monte Carlo had a defective accelerator.

---

1. Mr. Rice's argument neglects the question presented on appeal in *Butterfield*. In *Butterfield*, the question was whether the trial court erred in refusing to direct a verdict for plaintiff. Whether plaintiff presented enough evidence to support a jury verdict was not the question presented, as the Court acknowledged when it wrote as follows:

> [i]n turning to the evidence in the case at bar it should be borne in mind we are not called upon to determine whether [plaintiff] made out a submissible case for jury determination, as is the situation where a plaintiff's case has been as a matter of law withdrawn from jury consideration.

*Butterfield*, 499 P.2d at 542.

### 2. Whether Mr. Rice Knew or Should Have Known

Mr. Rice apparently concedes that an owner may be held liable for injuries caused by a defect in his automobile if he knew or, in the exercise of reasonable care, should have known of the defect. However, Mr. Rice argues that there is no evidence from which a reasonable jury could infer that he either knew or should have known of the defective accelerator.

In the previous section, the court rejected Mr. Rice's argument that there is no evidence that the Monte Carlo was defective. There is evidence that two individuals experienced a similar problem with the vehicle's accelerator shortly after the Rices deposited it at the Auction. There is no evidence that anyone came into contact with the vehicle, or had opportunity to come into contact with the vehicle, between the time the Rices relinquished possession and Young's employees began to experience accelerator problems. Viewing the evidence in the light most favorable to the nonmovants, and drawing all reasonable inferences in their favor, the court finds that there is a genuine issue whether Mr. Rice knew or, in the exercise of reasonable care, should have known of the problem with the accelerator.

### 3. Proximate Cause

■ Proximate cause is an essential element of plaintiff's case. *Union Pacific R. Co. v. General Foods Corp.,* 654 F.Supp. 1074, 1078 (D.Kan.1987); *St. Clair v. Denny,* 245 Kan. 414, 781 P.2d 1043, 1047 (1989). Under Kansas law, the "[p]roximate cause of an injury is that cause which 'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.' " *St. Clair,* 781 P.2d at 1047 (quoting *Wilcheck v. Doonan Truck & Equipment, Inc.,* 220 Kan. 230, 552 P.2d 938, 942–43 (1976)). The issue of proximate cause is a question of fact for the jury. *Union Pacific,* 654 F.Supp. at 1078; *St. Clair,* 781 P.2d at 1047. However, it becomes a question of law when all the evidence upon which a party relies is undis-

puted and susceptible of only one reasonable inference. *Id.*

Mr. Rice argues that he is entitled to summary judgment because there is no evidence of proximate cause. Although he couches his argument in terms of "proximate cause," his reasoning turns on whether there is sufficient evidence that the accelerator was defective. The court previously has addressed this argument in section one and to the extent he merely decorates his earlier argument with proximate cause language, the court, again, rejects it. However, to the extent he argues that there is no evidence of a causal connection between the alleged defect and the accident, the court disagrees. There is sufficient evidence from which a jury could infer that the Monte Carlo's accelerator was pulling toward the floorboard and that this condition led to an unanticipated acceleration which caused the accident and resulting injuries.

■ Mr. Rice also argues that the acts and omissions of Young's employees are intervening causes which sever the causal connection to his own alleged acts and omissions. Under Kansas law, a party's acts or omissions are not the proximate cause of an injury where the chain of events is broken by the intervention of a new, separate, wholly independent, and efficient cause. *McDermott v. Midland Management, Inc.,* 997 F.2d 768, 770 (10th Cir.1993); *Finkbiner v. Clay County,* 238 Kan. 856, 714 P.2d 1380 (1986).

Mr. Rice contends that, even if he was negligent, Mr. Young and his employees intervened to become the sole proximate cause of plaintiff's injuries. The crux of his contention is that their subsequent acts and omissions superseded his prior negligence by breaking the sequence of events between his negligence, if any, and the ultimate injury. In support, he points to Mr. Walle's deposition where Mr. Walle acknowledges that he "knew" something was wrong with the accelerator but still placed the Monte Carlo in the auction line. Mr. Rice further points to the inadequate warning Mr. Walle gave Mr. Headley regarding the accelerator.

■ The test of foreseeability determines whether an intervening negligent act insu-

lates the negligence of the original wrong-doer. *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585, 598 (1982) (quoting *George v. Breising*, 206 Kan. 221, 477 P.2d 983 (1970)). In *George v. Breising*, the Kansas Supreme Court explained as follows:

> [i]f the original actor should have reasonably foreseen and anticipated the intervening act causing injury in the light of the attendant circumstances, his act of negligence would be a proximate cause of the injury. Foreseeability of some injury from an act or omission is a prerequisite to its being a proximate cause of the injury for which recovery is sought. When negligence appears merely to have brought about a condition of affairs or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct and proximate cause and the former only the indirect or remote cause.

*George*, 477 P.2d at 988.

Ordinarily, questions regarding proximate cause and foreseeability are to be resolved by the jury. *McDermott*, 997 F.2d at 771. *See also Gard v. Sherwood Construction Co.*, 194 Kan. 541, 400 P.2d 995, 1000–02 (1965). The court is persuaded that whether Mr. Rice reasonably should have foreseen the intervening acts causing plaintiff's injury presents a question of fact for the jury. Accordingly, the court denies Mr. Rice's motion insofar as it is based on his intervening cause argument.

## B. *Vicarious Liability* [2]

Plaintiff argues that Mr. Rice is vicariously liable for the negligence of Mr. Young and his employees because defendants maintained both principal-agent and bailor-bailee relationships.

### 1. Agency

Plaintiff contends that Mr. Rice and Mr. Young maintained an agency relationship.

He argues that, as principal, Mr. Rice is liable for the negligence of Mr. Young, his agent, committed while Mr. Young carried out Mr. Rice's business. Mr. Rice concedes the existence of an agency relationship but denies liability for the alleged negligence of Mr. Young and his employees. Since Mr. Rice concedes the existence of an agency relationship, the court turns to the question of his vicarious liability.

A principal's vicarious liability for his agent's conduct arises under the doctrine of respondeat superior. *Brown v. Wichita State University*, 217 Kan. 279, 540 P.2d 66, 75 (1975), *vacated in part and adhered to in part on reh'g*, 219 Kan. 2, 547 P.2d 1015 (1976) (addressing other grounds); *Hughes v. Jones*, 206 Kan. 82, 476 P.2d 588, 592 (1970). Under Kansas law, a principal's liability for his agent's negligence is determined by asking whether, at the time in question, the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the agent's activities. *Brinkley v. Farmers Elevator Mutual Insurance Co.*, 485 F.2d 1283, 1286 (10th Cir.1973); *Brown*, 540 P.2d at 75; *Hughes*, 476 P.2d at 592. The primary factor to be considered is the control which the principal had over the agent. *Brown*, 540 P.2d at 75; *Hughes*, 476 P.2d at 592. *See also Gomez v. Hug*, 7 Kan.App.2d 603, 645 P.2d 916, 924 (1982) (noting that "[t]he key element for the application of respondeat superior is the principal's or master's right to direct and control the activities of the agent or servant"). If the principal had no right to direct and control the agent at the time in question, the principal is not vicariously liable to third parties for the agent's negligence. *Brinkley*, 485 F.2d at 1286.

Plaintiff argues that because the Auction was Mr. Rice's agent, Mr. Rice, as principal, is liable for any negligence committed during the course of the sale.[3] However,

---

**2.** In *Bair v. Peck*, 248 Kan. 824, 811 P.2d 1176, 1181–82 (1991), the Kansas Supreme Court discussed the doctrine of vicarious liability.

**3.** In his memorandum, Mr. Young makes an identical argument. Specifically, he argues that

Mr. Rice is liable for any negligence that a jury may attribute to him because he was Mr. Rice's agent and "[t]he principal is liable for the negligence of its agents." Mr. Young's Memorandum in Opposition, (Doc. 109), at p. 13.

plaintiff does not contend, nor does he produce any evidence demonstrating, that Mr. Rice had the right to direct and control Mr. Young and his employees at the time in question.[4] Indeed, nowhere in the record before the court is there any evidence from which a finder of fact reasonably could infer that Mr. Rice had the requisite right to direct and control. Therefore, because the primary factor to be considered is the principal's right to control the agent at the time in question, and because the nonmovants have produced not a shred of evidence relevant to whether Mr. Rice had the necessary right to control, the court is persuaded that there is no genuine issue of material fact as to plaintiff's agency-based theory of vicarious liability. Accordingly, the court grants Mr. Rice's motion with respect to this theory.

The court finds additional support for its decision in Comment *a* to § 250 of the Restatement Second of Agency. Section 250 addresses a principal's liability for physical harm caused by non-servant agents. Comment *a* explains as follows:

> [a] principal employing another to achieve a result but not controlling or having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relation of principal and agent there is added that right to control physical details as to the manner of performance which is characteristic of the relation of master and servant that the person in whose service the act is done becomes

subject to liability for the physical conduct of the actor.

In the instant case, there is no evidence, or even argument, that Mr. Rice had the right to control, at the time in question, the physical details as to the manner of performance. Plaintiff's entire argument flows from the simple fact that Mr. Young acted as auctioneer. However, it is recognized that, as to their physical activities, auctioneers are independent contractors.[5]

In short, plaintiff grounds his agency-based theory of vicarious liability on a showing that Mr. Young served as auctioneer. Such a showing may be sufficient to confer upon a person the generic title of agent, but it is insufficient to establish vicarious liability for all of that person's alleged negligence. Plaintiff points to no evidence from which a jury reasonably could infer that, at the time in question, Mr. Rice's "agents" were engaged in the furtherance of his business to such a degree that he had the right to direct and control their activities.

### 2. Bailment

■ "A bailment is the delivery of personal property by one person to another for a specific purpose, with an express or implied contract that when the purpose has been fulfilled the property will be returned or accounted for." *West v. Collins*, 251 Kan. 657, 840 P.2d 435, 441 (1992) (quoting *Western Motor Co. v. Koehn*, 12 Kan.App.2d 215, 738 P.2d 466 (1987), *aff'd*, 242 Kan. 402, 748 P.2d 851 (1988)) (internal quotation marks omitted). Mr. Rice concedes that a bailment existed in the instant case.

Plaintiff argues that Mr. Rice is vicariously liable for the negligence of Mr. Young and his employees because as bailor he is liable for the negligence of his bailee. Contrary to

---

4. Nor does Mr. Young contend, or produce any evidence demonstrating, that Mr. Rice had the requisite right to direct and control.

5. "A person may be both an independent contractor and an agent for another. Thus, for example, ..., an auctioneer, and other similar persons, employed either for a single transaction or for a series of transactions, are agents, although as to their physical activities they are independent contractors...." 41 Am.Jur.2d *Independent Contractors* § 2 (1968). *Cf.* Restate-

ment 2d *Agency* § 14 N cmt. a, at p. 80 (1958) (stating that "most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and selling agencies are independent contractors as the term is used in the Restatement of this subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services").

plaintiff's argument, the general rule is that a bailor is not liable to third persons for injuries caused by his bailee's negligent use of the bailed property. 8 Am.Jur.2d *Bailments* § 275, at pp. 1005–06 (1980); 8 C.J.S. *Bailments* § 97, at pp. 339–40 (1988). *See also Johnson v. S.O.S. Transport, Inc.,* 926 F.2d 516, 519 (6th Cir.1991) (stating Kentucky law); *Baugh v. Rogers,* 24 Cal.2d 200, 148 P.2d 633, 641 (1944) (stating general rule regarding bailor's vicarious liability); *Greenwood v. Kier,* 125 Colo. 333, 243 P.2d 417, 420, 421 (1952) (same); *DeArmon v. B. Mears Corp.,* 312 N.C. 749, 325 S.E.2d 223, 226–27 (1985) (same); *Stover v. Critchfield,* 510 N.W.2d 681, 684 (S.D.1994) (same); *Hammerbeck v. Hubbard,* 42 Wash.2d 204, 254 P.2d 479, 484 (1953) (same).[6]

■■■■■ A bailor-bailee relationship is not within the doctrine of respondeat superior. *Hammerbeck,* 254 P.2d at 484; 8 Am.Jur.2d *Bailments* § 275, at pp. 1005–06 (1980). Generally, a bailor relinquishes control of the bailed property when he delivers it to the bailee. As a result, liability for the use of the bailed property falls on the bailee rather than the bailor, who relinquished control. *Southard v. Hansen,* 376 N.W.2d 56, 58 (S.D. 1985); 8 Am.Jur.2d *Bailments* § 274, at 1005 (1980). However, where the bailor retains control over the bailed property, exercised by himself or his agent or employee, he remains liable for damages caused by its use.

In *Atkinson v. Herington Cattle Company,* 200 Kan. 298, 436 P.2d 816 (1968), the Kansas Supreme Court acknowledged the general rule. Specifically, the Court wrote that "[w]hile a bailor generally is not liable to third persons for damages resulting from the bailee's use of the bailed property, the bailor remains liable, however, where he retains control of the bailed property through himself or an agent or employee." *Atkinson,* 436 P.2d at 828.

According to the general rule stated above, and repeated in *Atkinson,* a bailment rela-

tionship alone is insufficient to give rise to the doctrine of respondeat superior. *See, e.g.,* 8 Am.Jur.2d *Bailments* § 275, at pp. 1005–06 (1980). In order for the bailor to be vicariously liable for the negligence of his bailee, the situation must come within an exception to the general rule. For example, as the Court states in *Atkinson,* where the bailor and bailee stand in an agency relationship in which the bailor exercises the requisite control.

Plaintiff apparently argues that Mr. Rice is vicariously liable for the negligence of Mr. Young and his employees by merit of their agency relationship.[7] However, as discussed in the previous section, the record contains no evidence from which a finder of fact reasonably could infer that, at the time in question, Mr. Rice exercised the control necessary to bring their relationship within the doctrine of respondeat superior. Accordingly, the court granted Mr. Rice's motion with respect to plaintiff's agency-based theory of vicarious liability. Plaintiff's bailment-based theory of vicarious liability also turns on the issue of control. Without a showing that Mr. Rice retained control over the Monte Carlo, either personally or through his agent, plaintiff's bailment-based theory is unavailing. Plaintiff establishes no such control. Indeed, the court can find no evidence in the record which could support a reasonable inference that Mr. Rice exercised the necessary control. Accordingly, the court grants Mr. Rice's motion insofar as it is directed to plaintiff's bailment-based theory of vicarious liability.

Additionally, although unclear, the parties seem to attach particular significance to the fact that the bailed property is an automobile. That a vehicle was involved does not alter the result. Mr. Rice is not vicariously liable for the driver's negligence merely because he was the owner of the Monte Carlo. Mere ownership, unaccompanied by a relationship such as that between master and

---

**6.** The general rule also applies where the bailed property is an automobile. 60A C.J.S. *Motor Vehicles* § 439, at pp. 1029–30 (1969).

**7.** In his discussion of his bailment-based theory of vicarious liability, plaintiff cites *Halverson v.*

*Blosser,* 101 Kan. 683, 168 P. 863 (1917), for the proposition that an owner of an automobile is not liable for injuries caused by a permissive non-owner driver, unless the driver was the owner's agent or servant.

**1408**

servant, is insufficient to give rise to vicarious liability.[8]

## V. CONCLUSION

In this action, plaintiff seeks to hold Mr. Rice liable for his alleged independent negligence and vicariously liable for the negligence of Mr. Young and his employees. Mr. Rice moves for summary judgment as to both theories of liability.

"Kansas has been very emphatic that, except in cases where only one inference can be drawn from the facts, negligence, proximate cause, and foreseeability are questions of fact for the jury." *McDermott*, 997 F.2d at 771 (citing *St. Clair*, 781 P.2d at 1047; *Baker v. City of Garden City*, 240 Kan. 554, 731 P.2d 278, 281 (1987); *Gard*, 400 P.2d at 1000 & 1002; *Rowell v. City of Wichita*, 162 Kan. 294, 176 P.2d 590, 595 (1947)). As to plaintiff's claim of "independent negligence," Mr. Rice argues that only one inference can be drawn from the facts. The court disagrees. Accordingly, the court denies Mr. Rice's motion to the extent it is based on the following three arguments: (1) there is no evidence of a specific defect; (2) there is no evidence Mr. Rice knew or should have known of the defect; and (3) there is no evidence to establish proximate cause.

However, because the record provides no factual basis for vicarious liability, the court grants Mr. Rice's motion to the extent it is directed to the agency- and bailment-based theories of vicarious liability.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant Rice's motion for

summary judgment (Doc. 100) is granted in part and denied in part as set forth herein.

---

8. In Kansas, where the owner is not the driver, he is not liable for damages resulting from an accident merely by merit of his ownership. *See West v. Collins*, 251 Kan. 657, 840 P.2d 435, 443 (1992) (writing that "[w]e hold that liability of the owner of a vehicle involved in an accident while being driven by a permissive driver must be determined under tort theories such as negligent entrustment, and vicarious liability will not be imputed to a vehicle owner based solely on permissive use by a third party").

The owner's vicarious liability, if any, arises where, at the time of the accident, the agent was acting in furtherance of the principal's business and under his direction and control. *See Halverson*, 168 P. at 863–64 (explaining, in a case where plaintiff sought to hold the owner of a vehicle liable for injuries sustained in an accident at which the owner was not present, that "[l]iability cannot result from ownership of an automobile.... Liability ... arises, if at all, on the relation of master and servant or principal and agent, and depends upon whether the [driver] was engaged in the [owner's] business at the time of the accident and was acting within the scope of his employment. If the [driver] was acting under the direction and control of the [owner] in operating the car which caused the injury, and in furtherance of his business, he may be liable under the general principles governing the relation of master and servant or principal and agent").