David C. WHEAT and Kral Ann Wheat, Plaintiffs,

v.

Elmo T. KINSLOW, Enterprise Rent–A–Car, Enterprise Leasing Co.-Southwest, and the Western Motor Co., Inc., Defendants.

No. CIV.A.02–2025–CM.

United States District Court, D. Kansas.

Oct. 24, 2003.

H. Scott Beims, Atwood, KS, J. Bradley Hardman, Wittman & McCord, Colorado Springs, CO, for Plaintiffs.

James P. Nordstrom, Steven R. Fabert, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendants.

## *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

This action arises from a motor vehicle accident that occurred on January 18, 2000, between plaintiff David Wheat and defendant Elmo Kinslow (hereinafter "Kinslow"). Plaintiffs have sued defendants Enterprise Rent–A–Car, Enterprise Leasing Company—Southwest, and the Western Motor Company, Inc., alleging liability for negligent entrustment of a vehicle to Kinslow. Plaintiffs also claim the defendants engaged in a joint enterprise and are therefore vicariously liable for the acts of Kinslow. This matter comes before the court on defendant Enterprise Leasing Company—Southwest's (hereinafter "Enterprise Southwest") Motion for Summary Judgment (Doc. 73). Enterprise Southwest claims plaintiffs failed to serve process on it and that the statute of limitations has expired on plaintiffs' claims. Enterprise Southwest further claims that no facts exist to support plaintiffs' negligent entrustment, agency and joint venture claims. As set forth below, Enterprise Southwest's motion is granted.

## I. Facts [1]

As a preliminary matter, the court notes that plaintiffs' response brief fails to adequately respond to, much less controvert, Enterprise Southwest's statement of facts. Plaintiffs summarily deny several paragraphs of Enterprise Southwest's statement of facts without citing to any evidentiary support, and then proceed to state their own facts, incorporating their supplemental statement of facts previously submitted in response to defendant Western

Motor Company's (hereinafter "Western") motion for summary judgment. Local Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the number of the movant's fact that is disputed." D. Kan. Rule 56.1(b)(1). Plaintiffs have failed to comply with these requirements. Thus, where allegedly disputed facts are not directly controverted by evidence contained in the record, the court considers those facts uncontroverted pursuant to Fed.R.Civ.P. 56. However, the court will deem Enterprise Southwest's facts controverted to the extent that plaintiffs' own facts fairly meet the substance of Enterprise Southwest's statement of facts and are supported by competent evidence.

In January 2000, Western and Enterprise Southwest were separate and distinct legal corporate entities with no shared officers, directors or ownership in each other's stock. Western was engaged in the sale and service of automobiles; Enterprise rented vehicles to customers of Western and other dealerships in Garden City, Kansas. At that time, Enterprise Southwest maintained an office within Western's building, free of charge. Calls to Western and/or Enterprise Southwest at the Western building came through one central line and were transferred to the appropriate extension. Before Enterprise Southwest moved its office into Western's building, Western maintained a fleet of vehicles that it leased to customers while customer vehicles were in for warranty repair. Warranty coverage on newer vehicles normally included reimbursement for the cost of renting or leasing another vehicle while

---

1. The court construes the facts in the light most favorable to plaintiffs as the nonmoving party pursuant to Fed.R.Civ.P. 56.

the customer's vehicle was undergoing warranty work.

Once Enterprise Southwest moved into the Western building, Western ceased maintenance of its fleet of vehicles and referred customers needing replacement vehicles to Enterprise Southwest. Western had no legal or contractual right to determine who was eligible to rent a vehicle from Enterprise Southwest. Rather, Enterprise Southwest made the decision whether or not to rent to Western customers who were referred. Western customers who had warranty coverage that included the cost of renting or leasing another vehicle were not required to rent vehicles from Enterprise Southwest, but instead could choose what, if any, rental company to use. When Western referred to Enterprise Southwest a customer with warranty coverage for the cost of renting or leasing a vehicle, Western issued Enterprise Southwest a check for the rental costs. Western then sought reimbursement from the manufacturer. Western received no monetary compensation or commission from Enterprise Southwest's renting or leasing of vehicles.

Kinslow, a resident of Ulysses, Kansas, and a Western customer, had a warranty under which he was entitled to reimbursement from his automobile's manufacturer for the cost of a rental vehicle while his vehicle was in service during the warranty period. Kinslow was not an employee of either Enterprise Southwest or Western.

On January 14, 2000, Western towed Kinslow's vehicle from his home in Ulysses, Kansas, to the Western facility in Garden City, Kansas, for warranty service. On January 17, 2000, Kinslow went to the Western facility to obtain alternate transportation while his vehicle underwent the warranty service. Dennis German, a Western employee, escorted Kinslow to the Enterprise Southwest office in the Western facility to rent a replacement vehicle.

Rodney Clews was the Enterprise Southwest rental agent who assisted Kinslow that day. Clews rented a 2000 Pontiac sedan to Kinslow and allowed Kinslow to take the vehicle from the Enterprise Southwest lot. Enterprise Southwest owned the 2000 Pontiac it rented to Kinslow. However, Clews failed to properly perform Enterprise Southwest's eligibility verification requirements for a renter between the ages of 18 and 21 (the age category in which Kinslow was included) and failed to determine whether Kinslow was an eligible renter. The rental agreement listed Kinslow as the renter and only authorized operator of the 2000 Pontiac. Kinslow signed the Enterprise Southwest rental form that represented he was personally insured, and Kinslow provided details regarding his insurance policy. Clews failed to verify Kinslow's insurance coverage and did not obtain approval for the rental from a branch manager or assistant manager.

On the morning of January 18, 2000, Clews contacted Kinslow's insurance company to verify Kinslow's policy and learned that Kinslow did not have current insurance coverage. Clews then telephoned Kinslow and told him to get his insurance reinstated or return the rental vehicle. That evening, on Kinslow's way to the Enterprise Southwest office to return the 2000 Pontiac, Kinslow crossed the center line on U.S. Highway 83 and collided head-on with plaintiff David Wheat's vehicle. At the time of the accident, Kinslow was driving the 2000 Pontiac.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. Service of Process/Statute of Limitations

In addition to the substantive grounds contained in its motion for summary judgment, Enterprise Southwest asserts as an additional basis for summary judgment that plaintiffs' claims are time barred because plaintiffs never attempted or achieved service of process on Enterprise Southwest. Plaintiffs claim that they served process on Enterprise Rent–A–Car, which was doing business as Enterprise Southwest, thus effecting service of process on Enterprise Southwest in compliance with the applicable Kansas and federal service of process rules. Because the court believes this issue dispositive of plaintiffs' claims, the court first addresses this procedural argument.

 The statute of limitations is the period of time between the date a cause of action arises and the last day on which an individual may seek to commence a cause of action under the applicable law. *Panhandle E. Pipe Line Co. v. Brecheisen,* 323 F.2d 79 (10th Cir.1963). An action must be commenced before the running of the applicable statute of limitations. *Grimmett v. Burke,* 21 Kan.App.2d 638, 906 P.2d 156, 159 (1995). The statute of limitations in this case was two years. Kan.

Stat. Ann. § 60–513. Thus, plaintiffs must have commenced this action before January 18, 2002, two years after the date of the accident, or the action must somehow relate back to that date in order for it to have been timely filed. *Grimmett*, 21 Kan. App.2d 638, 906 P.2d at 159–160. Under Kansas law, an action is commenced by service of the summons on a defendant, which must be completed within 90 days after the complaint is filed. *See id; see also* Kan. Stat. Ann. § 60–203(a). However, if plaintiffs did not obtain service within 90 days, plaintiffs could, upon a showing of good cause to the court, obtain an additional 30 days to complete service on defendants. Kan Stat. Ann. § 60–203(a).

Plaintiffs filed their lawsuit on January 18, 2002, exactly two years after the accident. Plaintiffs had until April 18, 2002, to serve process on defendants in order for the suit to have been timely filed and within the statute of limitations. On February 7, 2002, the clerk of the court issued summons to the defendants for service by plaintiffs. Plaintiffs served separate summons on Enterprise Rent–A–Car and Western on April 5, 2002. Plaintiffs served a summons on Kinslow on April 15, 2002. Plaintiffs failed to serve process on Enterprise Southwest.

Enterprise Southwest was made aware of the lawsuit by the Enterprise Rent–A–Car office in Garden City, Kansas. On April 19, 2002, counsel for Enterprise Southwest contacted counsel for plaintiffs by telephone and confirmed that plaintiffs had not attempted to serve Enterprise Southwest. On April 23, 2003, Enterprise Southwest filed an answer to plaintiffs' complaint, stating as its first two defenses that plaintiffs failed to serve Enterprise Southwest with the lawsuit and that the statute of limitations on plaintiffs' claims had expired. (Answer of Enterprise Southwest, ¶¶ 9 and 10). That same day, counsel for Enterprise Southwest sent a letter to counsel for plaintiffs stating in relevant part:

I have been asked by Enterprise Leasing Company—Southwest to review the lawsuit you recently filed against it in U.S. District Court in Kansas City, Kansas. This letter is to confirm our telephone conversation of Friday, April 19 concerning the above matter.

You confirmed for me that no attempt has yet been made to serve process on Enterprise Leasing Company—Southwest. You requested that I agree to accept service on behalf of that company. I have not yet received authority to accept service or to waive service of process, and do not know that I will ever receive that authority. You may service process on Enterprise Leasing Company—Southwest through its registered agent, The Corporation Company, Inc. . . .

. . . I am not sure who you have attempted to sue by naming Enterprise Rent–A–Car of Garden City. If you intend this party to be a d/b/a for Enterprise Leasing Company—Southwest, please advise. I do not know of any business entity other than Enterprise Leasing Company—Southwest that is responsible for the renting of this vehicle.

I would appreciate receiving copies of any documents reflecting attempts to serve process on any of the defendants. Even though you have assured me that no attempt has yet been made to serve Enterprise Leasing Company—Southwest, and that it is not in default, I have taken the liberty to prepare and file an answer in the name of that company. I enclose a copy of that Answer.

Plaintiffs did not respond to this correspondence, and the record shows no evidence plaintiffs took any other steps to serve Enterprise Southwest.

Plaintiffs claim that the summons and complaint served on Enterprise Rent–A–Car, a separately named defendant, effected service on Enterprise Southwest because Enterprise Rent–A–Car was doing business as Enterprise Southwest, and because employees who managed the branch office in Garden City, Kansas, (where the summons and complaint were served) were supervised by regional and area supervisors and received their training through Enterprise Southwest. Plaintiffs claim that, because of the business relationship between Enterprise Rent–A–Car and Enterprise Southwest, the service on Enterprise Rent–A–Car should be deemed substantial compliance with the procedural rules. Plaintiffs also contend that Enterprise Southwest did not notify them, prior to the running of the statute of limitations, that it had not been properly served or that Enterprise Rent–A–Car was the assumed name of or doing business as Enterprise Southwest. Other than citing Kan. Stat. Ann. §§ 60–304(e) and 60–204 regarding proper methods of service, plaintiffs cite no authority for their failure to serve Enterprise Southwest with a summons and complaint as required by both the Federal and Kansas Rules of Civil Procedure, despite the fact they were put on notice by counsel for Enterprise Southwest that it had not been served. *See* Fed.R.Civ.P. 4; *see also* Kan. Stat. Ann. § 60–203.

■ Plaintiffs named both Enterprise Rent–A–Car and Enterprise Southwest as defendants in the case. Plaintiffs had the burden to properly serve both Enterprise Rent–A–Car and Enterprise Southwest. Plaintiffs claim that they substantially complied with the service rules by serving Enterprise Rent–A–Car. While plaintiffs properly followed the service rules in serving Enterprise Rent–A–Car, such service on Enterprise Rent–A–Car is not sufficient for service on Enterprise Southwest. In fact, plaintiffs did absolutely nothing to

effect service of process on Enterprise Southwest. There is no record that plaintiffs even attempted to serve a summons on Enterprise Southwest. Enterprise Southwest provided plaintiffs with the address and name of its registered agent at the time it filed its answer containing its defense of failure to serve process. At that point, plaintiffs could have sought the court's approval to extend the time in which to serve the summons and complaint on Enterprise Southwest, which would have brought their claims against Enterprise Southwest within the applicable statute of limitations. Instead, plaintiffs did nothing to ensure proper service on Enterprise Southwest.

■ In Kansas, the general rule is that plaintiffs are given a chance to correct service of process when service is deemed defective if it is clear (1) that defendants had actual notice of the lawsuit, (2) that plaintiffs relied on the service to their detriment, and (3) that defendants did not raise the issue of improper service until it was too late for plaintiffs to obtain proper service. *Grimmett,* 21 Kan.App.2d 638, 906 P.2d at 164. However, in *Grimmett v. Burke,* the court held that where a plaintiff made no attempt to obtain proper service on defendant, service was not "purported" or "appeared" to have been made and the action was barred by the running of the statute of limitations. 21 Kan.App.2d 638, 906 P.2d at 164–65. Similar to the court's holding in *Grimmett,* this court holds that service has not been "purported to have been made" as required under Kan. Stat. Ann. § 60–203(b), nor was service in substantial compliance with the service rules under Kan. Stat. Ann. § 60–204, because plaintiffs took *no* steps to serve Enterprise Southwest. *See id.*

Enterprise Southwest has maintained throughout the lawsuit that plaintiffs did not serve it with a summons and complaint

and that the statute of limitations expired with regard to plaintiffs' claims against it. (Answer of Enterprise Southwest, ¶¶ 9 and 10; Pretrial Order, ¶¶ 5(b) and 6(b)(1) and (2)). The court agrees. While the court acknowledges that dismissal of plaintiffs' claims against Enterprise Southwest is a harsh result, the court finds that plaintiffs acted with utter disregard for the service rules and failed to even attempt service on Enterprise Southwest, despite the fact that plaintiffs received notice from Enterprise Southwest's counsel that it had not been served. Therefore, the court finds plaintiffs' claims against Enterprise Southwest are barred by the statute of limitations and grants Enterprise Southwest's Motion for Summary Judgment on this issue.

Even if the court found that plaintiffs had properly served Enterprise Southwest, the court holds that plaintiffs have failed to create genuine issues of material fact sufficient to survive Enterprise Southwest's Motion for Summary Judgment on the substantive aspects of plaintiffs' claims. The court analyzes each of those claims below.

### B. Negligent Entrustment

█ Plaintiffs allege that Enterprise Southwest negligently, carelessly and recklessly entrusted the 2000 Pontiac to Kinslow, an 18–year old driver, thereby causing the accident between Kinslow and plaintiff David Wheat. Enterprise Southwest claims that no material facts exist to support plaintiffs' claim.

██ As this court noted in its September 29, 2003, Memorandum and Order (Doc. 84) ruling on Western's motion for summary judgment, negligent entrustment is a well recognized theory of liability in Kansas.[2] *See McCart v. Muir,* 230 Kan.

618, 641 P.2d 384 (1982); *Fogo v. Steele,* 180 Kan. 326, 304 P.2d 451 (1956). A negligent entrustment claim is based upon the owner of a motor vehicle entrusting, lending, permitting, furnishing or supplying the vehicle to a person the owner knows, or had reasonable cause to know, to be an incompetent or a habitually careless driver. *McCart,* 230 Kan. at 620, 641 P.2d at 387; *Fogo,* 180 Kan. at 328, 304 P.2d at 452. "An incompetent driver is one, who by reason of age, experience, physical or mental condition, or known habits of recklessness, is incapable of operating a vehicle with ordinary care." *McCart,* 230 Kan. at 620–21, 641 P.2d at 387; *see also Priestly v. Skourup,* 142 Kan. 127, 45 P.2d 852 (1935).

Plaintiffs claim that, because of the relationship between Western and Enterprise Southwest, Kinslow, an 18–year–old driver, was permitted to rent the 2000 Pontiac from Enterprise Southwest when he would not have been permitted to do so otherwise. In particular, plaintiffs rely on Enterprise Southwest's policy of not renting to drivers in the 18 to 21 age range because of the risk associated with drivers in that age group. According to plaintiffs, Enterprise Southwest rented to 18 to 21 year-old customers only when those customers were referred to Enterprise Southwest by a preferred source such as Western.

There is no evidence in the record to demonstrate Enterprise Southwest knew, or had reason to know, prior to the accident on January 18, 2000, that Kinslow was an incompetent or careless driver. Western referred Kinslow to Enterprise for a rental vehicle while his personal vehicle underwent warranty work. Because Western was a preferred customer source,

---

**2.** The court incorporates by reference its analysis of each of plaintiffs' claims contained in its September 29, 2003, Order.

Enterprise Southwest rented Kinslow a vehicle even though it normally would not have rented to an 18 year-old driver. Enterprise Southwest had Kinslow complete a rental form on which Kinslow represented he possessed valid insurance. Although Enterprise Southwest knew Kinslow was 18 years old, Enterprise Southwest was not privy to Kinslow's driving record or familiar with his driving habits. Kinslow was a validly licensed driver in the State of Kansas, and there is no evidence to suggest that Kinslow was a reckless or incompetent driver simply because of his age.[3]

Plaintiffs argue Enterprise Southwest knew that Kinslow was a reckless or incompetent driver simply by virtue of his age and because Enterprise Southwest rental guidelines considered 18 year-old drivers as high risk and normally ineligible to rent Enterprise vehicles. However, as the court noted in its September 29, 2003, Order, accepting plaintiffs' argument would endorse a per se characterization of 18 year-old drivers as reckless or incompetent and would create a more stringent standard than that legally set out in Kansas for a negligent entrustment claim, which the court is unwilling to do. Plaintiffs have failed to satisfy the requirement that Enterprise Southwest knew or should have known that Kinslow was an incompetent or reckless driver. There exists no genuine issue of material fact that would preclude summary judgment on plaintiffs' negligent entrustment claim. The court

grants Enterprise Southwest's Motion for Summary Judgment on this issue.

### C. Agency Relationship Between Enterprise Southwest and Kinslow

Plaintiffs allege that Kinslow was acting as Enterprise Southwest's agent at the time of the accident, thereby making Enterprise Southwest vicariously liable for plaintiffs' injuries. Specifically, plaintiffs claim that, at the time of the accident, Enterprise Southwest had assumed control over the right to use and possess the 2000 Pontiac and had directed Kinslow to return the 2000 Pontiac to Garden City, Kansas. Plaintiffs contend that, because of the control and authority Enterprise Southwest allegedly exercised over the 2000 Pontiac in requiring its return to Garden City, Kansas, Kinslow was acting as an agent for Enterprise Southwest at the time of the accident. Enterprise Southwest denies Kinslow was its agent in any way, and claims plaintiffs have, as a matter of law, failed to establish the existence of an agency relationship between it and Kinslow.[4]

As the court noted in its September 29, 2003, Order, an agency is defined in Kansas as "a contract, either express or implied, by which one party confides to another the management of some business to be transacted in [the] party's name, or on [the] party's account, and by which the other assumes to do business and to render an account of it."

---

**3.** Under Kan. Stat. Ann. § 8–222, an owner of a motor vehicle is held per se liable for the negligent acts of a permissive driver only when the permissive driver is under age 16. Kan. Stat. Ann. § 8–222; *see also Yetsko v. Panure*, 272 Kan. 741, 35 P.3d 904 (2001).

**4.** Enterprise Southwest claims that Clews acted beyond the scope of his authority as a Enterprise Southwest employee when he rented the vehicle to Kinslow. Enterprise Southwest thus claims that Kinslow had no right to

drive the 2000 Pontiac. Enterprise Southwest further claims that Clews had no authority to request that Kinslow return the vehicle when Clews discovered Kinslow did not have valid insurance coverage. Rather, Clews could request only that Kinslow park the car. For purposes of this memorandum and order, and considering the facts in a light most favorable to plaintiffs, the court considers Clews' actions as within his scope and authority as a Enterprise Southwest employee.

954

Barbara Oil Co. v. Kan. Gas Supply Corp., 250 Kan. 438, 446, 827 P.2d 24, 31 (1992). The question of whether an agency existed is one of law for the court to decide; however, resolution of any factual disputes regarding the existence of an agency is left to the jury. *Hartman v. Great Cent. Ins. Co.*, 915 F.Supp. 250, 254 (D.Kan.1996). An agency relationship may be either express or implied, and plaintiffs, as the party claiming the agency existed, must establish the existence of an agency. *Barbara Oil Co.*, 250 Kan. at 448, 827 P.2d at 32; *Highland Lumber Co. Inc. v. Knudson*, 219 Kan. 366, 370, 548 P.2d 719, 722 (1976).

 Agency is express if the alleged principal party delegated authority to the alleged agent by words which expressly authorized the agent to do the delegated act. If no express authorization is found, the court must consider whether the alleged agent possessed implied power. Implied power exists when, from the facts and circumstances of the case, it appears there was an implied intention to create an agency—regardless of whether the alleged principal denies the intention to create an agency or whether the parties themselves understood the relationship to be one of agency. *Highland Lumber Co. Inc.*, 219 Kan. at 370, 548 P.2d at 723. In *Shugar v. Antrim*, 177 Kan. 70, 74, 276 P.2d 372, 375 (1954), the Kansas Supreme Court held that an agency relationship is implied:

> if, from statements of the parties, their conduct and other relevant circumstances, it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which, when exercised by him, would normally and naturally lead others to believe in and rely on his acts as those of the principal. While the relations may be implied from a single transaction, it is more readily inferrable from a series of transactions. An agen-

cy will not be inferred because a third person assumed it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable.

*Id. See also Highland Lumber Co. Inc.*, 219 Kan. at 371, 548 P.2d at 723.

 Even if proof of an agency relationship exists, a principal is not automatically liable for the acts of his agent. A principal's vicarious liability for his agent's conduct is determined by the doctrine of respondeat superior. *Huenink v. Rice*, 859 F.Supp. 1398, 1405 (D.Kan.1994); *Hughes v. Jones*, 206 Kan. 82, 87–88, 476 P.2d 588, 592 (1970). Under Kansas law, this determination involves an analysis of whether the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the agent's activities. *Id.* The key element in this analysis is the principal's control over the agent's activities. *Id.* If the principal had no right to direct and control the agent at the time the alleged injury occurred, the principal is not vicariously liable to third parties for the agent's negligence. *Huenink*, 859 F.Supp. at 1405; *see also Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir.1973).

 Moreover, in Kansas, ownership of a vehicle is not sufficient to impute negligence of a driver to the owner of the vehicle. There is no general presumption that an individual in possession of another's vehicle is an employee or agent of the owner and acting on the owner's behalf. *See Felix v. Turner Unified Sch. Dist. No. 202*, 22 Kan.App.2d 849, 851, 923 P.2d 1056, 1058–59 (Kan.App.1996).

 Plaintiffs claim that Kinslow was returning the 2000 Pontiac to Enterprise

Southwest at Enterprise Southwest's demand. Plaintiffs argue that because Clews, acting as an agent of Enterprise Southwest, required Kinslow to return the 2000 Pontiac once Clews discovered Kinslow did not have valid insurance, and did not offer to pick up the vehicle, Kinslow bestowed a business benefit on Enterprise Southwest by returning the vehicle. Plaintiffs also argue that Enterprise Southwest chose the route Kinslow was required to travel to return the rental and the location for the return. Plaintiffs claim that, as a result, when Kinslow was involved in the accident on January 18, 2000, he was returning the 2000 Pontiac to Garden City as the agent of, and pursuant to the control of, Enterprise Southwest.

■ The undisputed facts of this case do not support the existence of an express agency agreement between Enterprise Southwest and Kinslow. Kinslow was not Enterprise Southwest's employee, and there is no evidence in the record to demonstrate that Enterprise Southwest gave Kinslow express authority to act on its behalf. The court thus turns to whether an implied agency agreement existed between Enterprise Southwest and Kinslow. The court finds no evidence in the record that Enterprise Southwest impliedly permitted Kinslow to act on its behalf or that Kinslow engaged in conduct that would normally and naturally lead others to believe he was acting on behalf of Enterprise Southwest.

The undisputed facts demonstrate merely that Kinslow was Enterprise Southwest's customer. Kinslow rented a replacement vehicle from Enterprise Southwest while his personal vehicle underwent warranty work. Enterprise Southwest owned the 2000 Pontiac it rented to Kinslow. When Enterprise Southwest discovered that Kinslow did not have valid insurance coverage, it required him to obtain insurance coverage or return the

2000 Pontiac. Without valid insurance, Kinslow was in violation of his rental agreement with Enterprise Southwest. Enterprise Southwest did not dictate the route Kinslow traveled to reach the Enterprise office in Garden City, Kansas, that day. Nor did Enterprise Southwest control Kinslow's negligent operation of the vehicle at the time of the accident. Enterprise Southwest merely requested that Kinslow return the vehicle because he was in violation of the terms of the rental agreement. Even if an agent of Enterprise Southwest had not contacted Kinslow on January 18, 2000, and required him to return the vehicle, Kinslow would have had to return the vehicle at some point when the rental relationship concluded. Kinslow was not acting as the agent of Enterprise Southwest in doing so. Rather, Kinslow was returning the vehicle because he was in violation of the rental agreement and Enterprise Southwest had notified him of its intent to terminate the rental agreement.

To hold that Enterprise Southwest and Kinslow had an agency relationship would, in essence, create an agency relationship between every rental car business and its customers. As such, even viewing the record in the light most favorable to plaintiffs, the court concludes that no reasonable jury could find that Kinslow was Enterprise Southwest's agent. Therefore, the court grants Enterprise Southwest's Motion for Summary Judgment on this claim.

### D. Joint Enterprise

■ Plaintiffs allege that on January 18, 2000, defendants were involved in a common enterprise to transport the 2000 Pontiac from Ulysses, Kansas, to the business location of Western and Enterprise Southwest in Garden City, Kansas. Plaintiffs claim defendants shared a common interest in arranging for transport of the

2000 Pontiac and that each defendant had the right, and exercised an equal right, to jointly control the transport of the 2000 Pontiac. Plaintiffs therefore contend that all defendants are vicariously liable for Kinslow's acts in operating the 2000 Pontiac on January 18, 2000. Enterprise Southwest denies any joint enterprise existed.

 As the court noted in its September 29, 2003, Order, plaintiffs have the burden of proving the existence of a joint enterprise. *Nature's Share, Inc. v. Kutter Prods., Inc.,* 752 F.Supp. 371, 383 (D.Kan. 1990) (citing *Yeager v. Graham,* 150 Kan. 411, 416, 94 P.2d 317 (1939)). To establish a joint enterprise between Western, Enterprise Southwest, and Kinslow, and impose vicarious liability upon Enterprise Southwest for Kinslow's acts, plaintiffs must establish that defendants had: 1) an agreement, 2) a common purpose, 3) a community of interest, and 4) an equal right to a voice accompanied by an equal right of control over the instrumentality (in this case the 2000 Pontiac). *Lightner v. Frank,* 240 Kan. 21, 24–25, 727 P.2d at 433 (1986) (citing *Scott v. McGaugh,* 211 Kan. 323, 327, 506 P.2d 1155 (1973)); *Klose .v. Wood Valley Racquet Club, Inc.,* 267 Kan. 164, 171–72, 975 P.2d 1218, 1224 (1999). There also must be equal responsibility for the negligent operation of the vehicle, and there can be no equal responsibility unless there is equal privilege and right to direct and control its operation. *Lightner,* 240 Kan. at 25, 727 P.2d at 433 (citing *Schmid,* 181 Kan. at 997, Syl. ¶ 2, 317 P.2d at 459).

In its September 29, 2003, Order, the court analyzed the joint enterprise claim with regard to Western's motion for summary judgment and held that no joint enterprise existed between the defendants. Plaintiffs have presented no additional evidence on this issue in responding to Enterprise Southwest's summary judgment motion, and, as such, the reasoning set forth in the September 29, 2003, Order is applicable here. The court reiterates that the facts alleged by plaintiffs point to a cooperation between two businesses to advance their own interests, not participation in a joint venture or joint enterprise. Plaintiffs' evidence fails to create a genuine issue of material fact sufficient to survive summary judgment on this claim. The court thus grants Enterprise Southwest's Motion for Summary Judgment as to plaintiffs' joint enterprise claim.

### E. Loss of Consortium

Plaintiffs contend that genuine issues of material fact exist regarding its loss of consortium claim. Plaintiffs do not dispute that their loss of consortium claim is derivative of their other tort claims. Because the court has granted summary judgment to Enterprise Southwest on each of plaintiffs' claims, this issue is moot.

**IT IS THEREFORE ORDERED** that defendant Enterprise Southwest's Motion for Summary Judgment (Doc. 73) is granted.